LUFKIN'S REAL ESTATE, INC. *vs.* JOHN J. ASEPH (and a companion case).

Plymouth. April 5, 1965. — June 10, 1965.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Damages,* Covenant against competition.

In a suit in equity by a real estate broker against two former employees seeking damages for breach by the defendants of a provision in their employment contracts with the plaintiff restricting their engaging in the real estate brokerage business after termination of their employment, findings merely that in the course of their employment the defendants learned that certain property was for sale and that after termination of their employment they engaged in the real estate brokerage business and received a commission for consummating a sale of such property did not afford a basis for a determination of the plaintiff's damages and did not support an award of damages in the amount of the commission.

TWO BILLS IN EQUITY filed in the Superior Court on November 30, 1962.

The suits were heard by *Good,* J., on a master's reports.

*John C. Wheatley* for the defendants.

No argument or brief for the plaintiff.

SPIEGEL, J. The plaintiff brought two bills in equity to "determine and adjudicate" that the defendants committed a breach of their respective employment contracts with the plaintiff and to enjoin them from engaging in the real estate business in violation of a restrictive covenant contained in these contracts.[1] The cases were ordered to be

_____

[1] Due to the passage of time the question of injunctive relief is no longer in issue.

tried together and were referred to a master. He made subsidiary findings and concluded that the defendants violated the covenant and that they "made one sale through information acquired while working for the . . . [plaintiff] and that the commission on this sale was $700." The cases were recommitted to the master for further findings, and a supplementary master's report was thereupon filed. The judge in each case entered an interlocutory decree overruling the defendant's exceptions to the reports, confirming the reports and denying the defendant's motion to dismiss. In each case the judge entered a final decree stating that the defendant "breached" his contract with the plaintiff "in that he engaged in the sale of real estate business in Brockton, . . . Massachusetts, within one year from the date" of termination of his contract. In each decree the judge also ordered "[t]hat the defendant pay to the . . . [plaintiff] $700 as damages for breaching his agreement . . ., [since] he received $700 as a commission for the sale of property consummated through information acquired while working for" the plaintiff. Each defendant appealed from the interlocutory and final decrees.

The facts do not appear to be in dispute. The plaintiff conducts a real estate business in Brockton and elsewhere. In the course thereof, it employs persons inexperienced in the selling of real estate and trains them in such matters in order to enable them to qualify for real estate brokers' licenses. The defendant Roberts, who had no experience in real estate matters, entered into a contract of employment with the plaintiff on January 10, 1961. The defendant Aseph, likewise inexperienced, also entered into a contract of employment with the plaintiff on January 2, 1962. Each contract provided as follows: "Agreement . . . between . . . [the plaintiff,] hereinafter called the Broker, and Licensed Independent Agent(s) [the defendant(s)]. . . . The Operator is to be a Licensed Independent Agent . . . . [T]he Operator shall not engage in the sale of real estate business in any area in which the Broker is transacting business during the period of which he is an Opera-

tor with the Broker and for a period of one year . . . after termination of this contract. Any Licensed Independent Agent guilty of such violation shall forfeit all monies due under this contract and shall be liable for any and all damage suffered by said Broker for any violation of the stipulations herein set forth . . . . This Contract may be terminated at will by either the Broker or the Licensed Independent Agent . . . .''

The plaintiff was the broker for one Bartorelli, a speculative builder, ''in the sale of practically all of his property.'' In the spring of 1962, Bartorelli's properties on Stonehill Street in Brockton were listed with the plaintiff by Roberts in the course of his employment. This listing was included in the plaintiff's master listing book, which was used by all of the plaintiff's employees, including the defendants, and was not available to the general public. Both defendants, in the course of their employment with the plaintiff, acquired the knowledge that Bartorelli had properties for sale on Stonehill Street.

In August, 1962, Aseph and Roberts discussed the formation of a partnership to conduct a real estate business, and, on September 10, 1962, entered into such a partnership and rented an office in Brockton for that purpose. Aseph and Roberts then terminated their contracts of employment with the plaintiff on September 18, 1962, and October 8, 1962, respectively. While engaged in their newly formed enterprise, they consummated five sales in the Brockton area, one of which concerned real estate owned by Bartorelli on Stonehill Street. The sale of this Bartorelli property brought them a commission of $700.

The defendants contend that damages have not been proved, and, in this connection, rely on *Snelling & Snelling of Mass. Inc.* v. *Wall*, 345 Mass. 634. In our view, that case governs the disposition of the cases at bar. The *Snelling* case involved a suit by an employment agency, against a former employee and a corporation organized by him, seeking damages for a breach by the employee of a covenant in his contract with the plaintiff not to operate an employ-

ment agency for one year after termination of his employment. In that case, the master's determination of damages rested on his finding that the gross income received by the former employee's corporation from fees received from customers of the plaintiff, with whom the former employee had previously dealt while in the plaintiff's employ, aggregated $9,742. In affirming a final decree dismissing the bill, we said that there was "no showing that any of the fees would have been paid to . . . [the plaintiff] if . . . [the former employee] had not been in business, nor what part of any particular fee represented lost profit to . . . [the plaintiff]. It is this practical difficulty of establishing monetary damages which is the basis for the equitable relief afforded by the specific enforcement of this type of contract. . . . When, however, damages are sought they must be proved and not left, as here, to speculation." *Id.* at 635–636. Compare *De Long Corp.* v. *Lucas,* 176 F. Supp. 104, 124–126 (S. D. N. Y.), affirmed 278 F. 2d 804, 810–811 (2d Cir.), where the necessary elements were proved.

There is nothing in the instant cases to show whether the $700 commission received by the defendants in selling the Bartorelli real estate would have been paid to the plaintiff if the defendants had not been in business, or to show what part of that commission represented lost profit to the plaintiff.

The interlocutory decree in each case is modified by striking the denial of the motion to dismiss, and as so modified is affirmed. In each case the final decree is reversed and a new decree is to be entered dismissing the bill.

*So ordered.*