Edna GOLDSTEIN, Plaintiff, Appellant,

v.

Robert E. KELLEHER, et al.,
Defendants, Appellees.

United States of America, Intervenor.

No. 83–1411.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1983.

Decided Feb. 29, 1984.

Rehearing and Rehearing En Banc
Denied April 3, 1984.

Skip Short, New York City, with whom Short & Billy, New York City, and John Granara, Medford, Mass., were on brief, for plaintiff, appellant.

James H. Anderson, Boston, Mass., with whom Douglas Danner, and Powers & Hall Professional Corporation, Boston, Mass., were on brief, for defendants, appellees.

Michael F. Hertz, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., William F. Weld, U.S. Atty., Boston, Mass., and Peter R. Maier, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C., were on brief, for intervenor.

Before CAMPBELL, Chief Judge, RO-SENN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

Edna Goldstein brought a diversity action in the district court against Dr. Robert Kelleher and the Rockdale Medical Corporation ("Rockdale"). She claimed medical malpractice and lack of informed consent stemming from a breast reduction operation performed by Dr. Kelleher in February 1978. At the trial, it was shown that Dr. Kelleher had repeatedly sliced through a previously undetected tumor in plaintiff's left breast and had completed the operation on both breasts notwithstanding his discovery.

After the surgery, plaintiff refused to undergo conventional medical treatment for cancer, allegedly because the mishap had induced a fear of the medical community. Instead she travelled to Mexico for alternative treatment, including laetrile. In 1981 plaintiff agreed to conventional treatment, but in the intervening three years the cancer had spread throughout her upper body.

Mrs. Goldstein's jury trial was conducted in the District of Massachusetts before a United States magistrate, with the express consent of the parties, as provided for in section 636(c)(3) of the Federal Magistrates Act. 28 U.S.C. § 636(c)(3). The jury rendered a verdict in the form of yes-no responses to certain written questions. These responses indicated findings that Dr. Kelleher was negligent in his treatment of the plaintiff but that his negligence did not cause her injuries or damage. The magistrate (who earlier had directed a verdict on plaintiff's informed consent claim) entered judgment for the defendant. Plaintiff appeals from both the adverse judgment and the denial of her motion for a new trial.

I.

■ In her reply brief, plaintiff contended for the first time that the consensual trial before the United States magistrate was unconstitutional and therefore a nullity. She urges us to adopt the view of a panel of the Ninth Circuit that section 636(c)(3)'s delegation of power to magistrates to conduct consensual jury and nonjury trials and enter judgments, without de novo review by a district judge, offends Article III of the federal Constitution. *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.,* 712 F.2d 1305 (9th Cir.1983). However, this panel's decision was recently reversed by the Ninth Circuit sitting en banc, by vote of eight of the eleven judges who sat. *Pacemaker,* 725 F.2d 537 (9th Cir.1984).

We agree with the en banc decision of the Ninth Circuit and with an earlier decision of the Third Circuit that section 636(c)(3) is not unconstitutional. *Wharton-Thomas v. United States,* 721 F.2d 922 (3d Cir.1983). As we find little to add to Judge Weis's

* Of the Third Circuit, sitting by designation.

thorough discussion in *Wharton-Thomas,* we rely in particular on the reasoning in that case, but with the following observations.

Magistrates—unlike the bankruptcy judges whose expanded jurisdiction was struck down in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)—are appointed and removed by Article III judges. 28 U.S.C. § 631(a) and (i). Further, all reference of cases to them must be approved by Article III judges and the references may be revoked at any time. 28 U.S.C. § 636(c)(1) & (6). Magistrates are thus in large measure shielded from coercion by the executive or legislative branches and from improper societal influences by the Article III salary and tenure safeguards pertaining to the judges under whose control they serve. The *Marathon* plurality itself stated, as regards magistrates, that there is "no serious threat that the exercise of the judicial power would be subject to incursion by other branches." 458 U.S. at 79 n. 30, 102 S.Ct. at 2875 n. 30.

There is, nonetheless, one major difference between the authority conferred upon the magistrate here and that conferred in past cases where the Supreme Court has approved the delegation. In past cases the ultimate decisionmaking power remained with the district judge. *United States v. Raddatz,* 447 U.S. 667, 681, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980). *See Marathon,* 458 U.S. at 83, 102 S.Ct. at 2877. In *Raddatz,* for example, the magistrate's recommended disposition went to the district judge for de novo consideration and entry of judgment. If the magistrate's authority to enter final judgment here were not limited to cases referred with consent of the parties, we would find this difference troubling indeed.

But insofar as Article III protects individual litigants, those protections can be waived. *Cf. Patton v. United States,* 281 U.S. 276, 281, 50 S.Ct. 253, 74 L.Ed. 854 (1930) (waiver of sixth amendment guarantee of trial by jury). The plaintiff as well as the defendant here voluntarily consented to have this action handled through to judgment by a magistrate. They gave their consent pursuant to procedures designed to insulate this choice from influence by either the district judge or the magistrate. 28 U.S.C. § 636(c)(2).

*Raddatz,* to the contrary, involved a non-consensual reference to a magistrate. 447 U.S. at 669, 100 S.Ct. at 2409. Similarly *Marathon* involved a non-consensual determination of a party's state law claim by an Article I bankruptcy judge. As Justice Rehnquist stated, "None of the cases has gone as far as to sanction the type of adjudication to which Marathon will be subjected *against its will* under the provisions of the 1978 Act." 458 U.S. at 91, 102 S.Ct. at 2881 (Rehnquist, J., concurring) (emphasis added). The only holding supported by a majority of the justices was that the ability of "a Bankruptcy Court to entertain and decide Northern's lawsuit *over Marathon's objection* was violative of Art. III of the United States Constitution." 458 U.S. at 91, 102 S.Ct. at 2881 (Rehnquist, J., concurring) (emphasis added). We therefore agree with the Third Circuit that *Marathon* and *Raddatz* do not go so far as to suggest that a purely consensual reference is unconstitutional even though the magistrate retains the power to enter judgment. *Wharton-Thomas v. United States,* 721 F.2d at 928. This is especially so where, as previously mentioned, both the reference and the magistrate are under direct control of an Article III court.

The importance of the consensual aspect of the arrangement is emphasized by early Supreme Court decisions upholding consensual grants of authority to masters and referees. *Kimberly v. Arms,* 129 U.S. 512, 9 S.Ct. 355, 32 L.Ed. 764 (1889); *Heckers v. Fowler,* 69 U.S. (2 Wall.) 123, 17 L.Ed. 759 (1864). In *Heckers v. Fowler* the parties to an action in federal district court agreed to refer the case to a referee "to hear and determine the same, and all issues therein, with the same powers as the court ... and that the report of said referee have the same force and effect as a judgment of said court." 69 U.S. (2 Wall.) at 127. The dis-

trict court ordered the referral and directed "that on filing the report of said referee with the clerk of the court, judgment be entered in conformity therewith, the same as if the cause had been tried before the court." *Id.* at 127. The Supreme Court rebuffed an attack on the broad reference, stating that the "[p]ractice of referring pending actions is coeval with the organization of our judicial system." *Id.* at 128. The Court also rejected the argument that a judgment entered by the clerk of the court was invalid. The initial order of the district court had authorized the entry of judgment on the referee's report and hence, "Judgment having been entered without objection, and pursuant to the order of the court and the agreement of the parties, it is not possible to hold that there is any error in the record." *Id.* at 133.

In *Kimberly v. Arms,* 129 U.S. at 524–25, 9 S.Ct. at 359–60, the Supreme Court again upheld "reference of a whole case to a master" with "the power to 'decide all the issues between the parties.'" The Court held that the rulings of the master "should have been treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made." *Id.* at 525, 9 S.Ct. at 359. Thus the broad consensual reference gave the master the power of decision, with only the degree of review afforded the magistrate's decision by this court in the present case.

In *DeCosta v. Columbia Broadcasting System, Inc.,* 520 F.2d 499 (1st Cir.1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976), this circuit upheld a broad consensual reference which invested the magistrate with power to decide the case, subject only to district court review for "manifest error." In that case we held that,

> From a constitutional viewpoint, we can see no significant difference between arbitration and consensual reference for decision to magistrates. In both situations

the parties have freely and knowingly agreed to waive their access to an Article III judge in the first instance . . . . If it be queried whether the dignity of Article III is being compromised by entering judgments on awards made by non-Article III personnel, the sufficient rejoinder is that judgments are entered on arbitrators' awards.

520 F.2d at 505–06. The review of the magistrate's award by the court of appeals under section 636(c)(3)[1] is as thorough as the review by the district court in *DeCosta.*

Believing that the Article III interests of both the litigants and the judiciary are adequately protected under section 636(c)(3), we uphold the magistrate's jurisdiction in the present instance. The litigants' interests are safeguarded by the consensual nature of the reference; the institutional interests of the judiciary are secured by the district court's control over both the references and appointments, and by the availability of appeal to an Article III court. *See Wharton-Thomas v. United States,* 721 F.2d at 929–30.

## II.

■ On the merits of the appeal, plaintiff argues the magistrate erred in granting the defendants twice as many peremptory challenges as plaintiff. The two defendants in the case are Dr. Kelleher and a professional association to which he belonged, Rockdale Medical Corporation. They were represented by a single attorney, and defendants stipulated that a verdict against Kelleher would apply against Rockdale. The interests of the two were indistinguishable.

The relevant statute, 28 U.S.C. § 1870 provides,

> In civil cases, each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory chal-

---

1. Under 28 U.S.C. § 636(c)(3) the decision of a magistrate can be appealed directly to the court of appeals "in the same manner as an appeal from any other judgment of a district court," while 28 U.S.C. § 636(c)(4) provides for consensual appeal to the district court.

lenges and permit them to be exercised separately or jointly.

While the magistrate urged counsel for the defendants to limit himself voluntarily to three peremptory challenges,[2] upon defendants' insistence, the magistrate, who may have mistakenly thought the statute gave each defendant an absolute right in the matter, allowed three peremptories to each of the two defendants, for a total of six. Plaintiff was limited to three.[3] Thereafter, nine jurors were excused on the basis of peremptory challenges—by whom exercised does not appear.

Plaintiff argues that the magistrate abused his discretion by rejecting her request that the two defendants be considered as a single party and be allowed but three challenges between them. Plaintiff also points out that she asked the magistrate, in the alternative, for six challenges, to match defendants' six.

Section 1870 gave the magistrate discretion to follow either path proposed by plaintiff. We believe he should have done so given the fact that the two defendants, represented by one attorney and parties to the verdict stipulation, clearly had identical interests at the trial. If each defendant had had even colorably different interests from the other, e.g., Nehring v. Empresa Lineas Maritimas Argentinas, 401 F.2d 767 (5th Cir.1968), cert. denied, 396 U.S. 819, 90 S.Ct. 55, 24 L.Ed.2d 69 (1969); Rogers v. DeVries & Co., 236 F.Supp. 110 (S.D.Tex. 1964), we would not question the magistrate's discretion, but it is hard to see any reason here for not equalizing peremptories as between plaintiff and defendants.

■ It is true the statute states flatly that each party "shall be entitled to three peremptory challenges." (Emphasis supplied.) Multiple parties "may" be considered as one, but there is no absolute requirement. However, while the trial court's discretion under the statute is considerable, it is not unlimited. John Long Trucking, Inc. v. Greear, 421 F.2d 125 (10th Cir.1970); Globe Indemnity Co. v. Stringer, 190 F.2d 1017 (5th Cir.1951). Defendants argue that plaintiff brought in the Rockdale Medical Corporation simply to impress the jury, and that it was fair to saddle the plaintiff with the adverse consequences of that choice. Plaintiff, however, offered to make only minimal reference to the corporation, and we do not see that plaintiff's choice to proceed against the corporation automatically gave Rockdale an interest adverse to Dr. Kelleher. Rather, we believe this was the very kind of case for which the statute's conferral of discretion upon the court to treat several parties as one was devised. We feel constrained to hold the magistrate abused his discretion in refusing either to treat both defendants as a single party or to allow plaintiff to exercise double the number of peremptory challenges.

■ While, however, the challenges were wrongly allocated, plaintiff has not made a minimal showing of any prejudice. We start with the absence in the record of a showing that plaintiff exercised her four peremptories. Since only nine jurors were excused on the basis of peremptories, it is conjectural whether she did. It is well established in the case law that one who does not exercise all his peremptory challenges cannot assign as error the court's refusal to allow a greater number. Connecticut Mutual Life Insurance Co. v. Hillmon, 188 U.S. 208, 23 S.Ct. 294, 47 L.Ed. 446 (1903); Kloss v. United States, 77 F.2d 462 (8th Cir.1935).

■ Plaintiff's attorney represents in his brief that he did, in fact, exercise all four peremptories. Counsel's representation is not an adequate substitute for a record showing. United States v. Gazda, 499 F.2d 161, 164 (3d Cir.1974); Fortunato

---

**2.** The final number of challenges was actually four instead of three per party based on allowance of an extra peremptory challenge for the alternate jurors. Fed.R.Civ.P. 47(b). Without objection, the magistrate allowed these extra challenges to be exercised against any prospective juror, not just against alternates.

**3.** The defendants actually were allotted a total of eight challenges, while plaintiff was allotted four. See note 2, supra.

*v. Ford Motor Co.,* 464 F.2d 962, 969 (2d Cir.1972). Even, however, were we to accept counsel's statement, we encounter other difficulties. There is nothing to show either that plaintiff was dissatisfied with any of the jurors finally selected or wished to select someone else. We think that before a reversal is granted, the complaining party should be able to point to some convincing indication in the record that if a further peremptory challenge had been allowed, he meant to challenge one or more jurors. *United States v. Diggs,* 522 F.2d 1310, 1318 (D.C.Cir.1975), *cert. denied,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *Signal Mountain Portland Cement Co. v. Brown,* 141 F.2d 471, 477 (6th Cir. 1944); *Rogers v. DeVries & Co.,* 236 F.Supp. at 112. Here, while plaintiff now complains that the jury was disproportionately male (five out of six), she did not make this point at the time the jury was empanelled or otherwise suggest dissatisfaction.[4]

> Knowing the facts, [she] cannot sit idly by, make no objection, and then after a verdict [against her] is returned, challenge it upon the ground that the jury was not legally constituted and was not a valid jury.

*Zito v. United States,* 64 F.2d 772, 773 (7th Cir.1933). *See also United States v. Diggs,* 522 F.2d at 1318. After the jury had been drawn, the magistrate asked,

> Are there any further questions from either counsel with reference to this chosen jury for the trial of this case?

Plaintiff's counsel responded, "No questions, Your Honor," and, to the question whether the parties were content, answered, "Yes."

Not only was the issue of the sex of the jurors not raised, but the record does not indicate which party challenged the three women who were disqualified. Such information would be relevant to this appeal, because if plaintiff challenged those women she could not now be heard to complain that

the jury was predominantly male. *See Frazier v. United States,* 335 U.S. 497, 505, 69 S.Ct. 201, 205, 93 L.Ed. 187 (1948) (defendant who used peremptory challenges to eliminate prospective jurors who were privately employed cannot challenge the panel on the ground that government employees were overrepresented). Under Fed.R.Civ.P. 61, the courts must disregard any error or defect which does not affect the substantial rights of the parties. In the absence of any indication that the jury selected was unsatisfactory to plaintiff at the time chosen, we are unwilling to reverse the verdict of a jury that to all appearances was disinterested, competent and suitable. *Matanuska Valley Lines v. Neal,* 255 F.2d 632, 636 (9th Cir.1957); *Local 36, International Fishermen v. United States,* 177 F.2d 320, 342 (9th Cir.1949), *cert. denied,* 339 U.S. 947, 70 S.Ct. 801, 94 L.Ed. 1361 (1950).

### III.

■ Plaintiff next argues that the magistrate should have granted a new trial because the jury's verdict of no damages was against the weight of the evidence. In reviewing a denial of such a motion, "the trial court will be found to have abused its discretion only if it refused to grant a new trial when the verdict was against the clear weight of the evidence." *Johnson v. A/S Ivarans Rederi,* 613 F.2d 334, 351 (1st Cir. 1980), *cert. dismissed,* 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981).

■ Damages are an element of plaintiff's case and must not be merely speculative. *Newton v. Rockwood & Co.,* 261 F.Supp. 485, 488 (D.Mass.1966), *aff'd,* 378 F.2d 315 (1st Cir.1967); *Lufkin's Real Estate, Inc. v. Aseph,* 349 Mass. 343, 208 N.E.2d 209 (1965). Further, a plaintiff "may not recover for damages that were avoidable by the use of reasonable precautions on his part." *Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575, 586, 441 N.E.2d 1027, 1034 (1982); *see also Fairfield v. Salem,* 213 Mass. 296, 100 N.E. 542 (1913).

---

4. Plaintiff also complains of the youth of the jury, but there is nothing in the record to show the age of its members.

The jury was instructed on plaintiff's duty to mitigate and based on the evidence in the case, including the testimony that the cancer had already spread to plaintiff's lymphatic system at the time of the surgery, the jury could reasonably have concluded that despite Dr. Kelleher's negligence, the spread of the cancer was not exacerbated by the tumor slicing. Further, the jury may have found that any injury could have been eliminated by prompt conventional treatment and that plaintiff's damages were wrought by her own choice to undergo laetrile treatment in Mexico. Given expert testimony to this effect we decline to overturn the jury verdict denying plaintiff damages. Regarding plaintiff's claims of emotional injury and fear of conventional medical treatment, we uphold the jury's rejection of these highly speculative claims. *Bullard v. Central Vermont Ry.*, 565 F.2d 193, 197 (1st Cir.1977).

### IV.

■■■■ Finally, plaintiff attacks the directed verdict rendered by the magistrate in favor of defendants on the informed consent claim. Plaintiff claimed that she was disappointed with the cosmetic results of the surgery. She further averred that had she been informed of the risk of a bad cosmetic result and the possible need for reconstructive surgery, she would have declined the operation. The magistrate correctly concluded that under Massachusetts law a plaintiff attempting to establish an informed consent claim must show "that had the proper information been provided neither he nor a reasonable person in similar circumstances would have undergone the procedure." *Harnish v. Children's Hospital Medical Center*, 387 Mass. 152, 158, 439 N.E.2d 240, 244 (1982); *see also Schroeder v. Lawrence*, 372 Mass. 1, 5, 359 N.E.2d 1301, 1303 (1977). The magistrate recognized that plaintiff had introduced enough evidence on the reasonable person element to allow that question to be resolved by the jury, but he found no evidence had been introduced regarding plaintiff's personal position had she been fully informed. Plaintiff did not testify at trial nor did her deposition contain any testimony as to whether she would have consented to the procedure if advised of the risks.

■■■■ In order to uphold a grant of a directed verdict, we must find that, viewing the evidence in the light most favorable to the non-moving party, reasonable jurors could come to but one conclusion. *deMars v. Equitable Life Assurance Society*, 610 F.2d 55, 57 (1st Cir.1979). We must give plaintiff the benefit of every legitimate inference. *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 973 (1st Cir.1969). However, such inferences may not rest on conjecture or speculation, but rather the evidence offered must make "the existence of the fact to be inferred more probable than its nonexistence." *Carlson v. American Safety Equipment Corp.*, 528 F.2d 384, 386 (1st Cir.1976). Plaintiff asserts that based on evidence of her expectations of improved appearance and her disappointment in the cosmetic result, the jury could have inferred that she would not have undergone the surgery had she known the attendant risks. We agree with the magistrate that such an inference would have rested on mere speculation. Dissatisfaction with the result does not make it more probable than not that plaintiff would have declined the procedure. The issue of informed consent must rest on foresight, not hindsight. *Canterbury v. Spence*, 464 F.2d 772, 787 (D.C.Cir.), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972). Dr. Kelleher had previously performed successful cosmetic surgery on plaintiff's chin, and he admittedly told her that breast reduction was a "drastic operation" and could cause a cyst. Thus if the evidence permits any inference at all, it is that plaintiff would likely have opted to undergo the surgery even had she been completely apprised of all the risks. Absent affirmative evidence that plaintiff personally would have declined the surgery had she been more fully informed of the risks, we hold the magistrate properly refused to indulge the speculative inferences pressed by plaintiff's counsel.

■■■ Plaintiff did attempt to introduce some evidence on this point at trial. Her

psychiatric expert was asked if he could form an opinion, with reasonable medical certainty, as to whether plaintiff would have consented to the operation had she been informed of the risks. A "form and foundation" objection was sustained. The expert did not know plaintiff until July 1981, three years after the surgery; nor had the expert questioned plaintiff on the issue of her prior consent. The magistrate could properly rule that an inadequate foundation had been laid to permit the expert to answer the question. We conclude that the magistrate did not abuse his broad discretion to make such relevance determinations. *United States v. Mehtala,* 578 F.2d 6, 9 (1st Cir.1978). Furthermore, plaintiff made no offer of proof as required by Fed. R.Evid. 103(a)(2), and plaintiff offered no theory under which the evidence should have been admitted. *Coe v. Yellow Freight System, Inc.,* 646 F.2d 444, 454 (10th Cir. 1981); *Wright v. Hartford Accident & Indemnity Co.,* 580 F.2d 809, 810 (5th Cir. 1978). We accordingly reject the challenge to the evidentiary ruling and uphold the directed verdict.

*Affirmed.*