Fahey, J.
These motions arise out of plaintiff, Pro-teon, Inc.’s (“Proteon”) complaint against defendants Digital Equipment Corporation (“Digital”) and Cablet-ron Systems, Inc. (“Cabletron”), pursuant to an assignment by Digital to Cabletron of a Software Source Code License Agreement (“License Agreement"). Pro-teon alleges, as to Digital, breach of two separate contracts, unfair and deceptive practices of violation of Massachusetts General Laws, c. 93A and, as to Cabletron, unjust enrichment. Digital filed counterclaims of abuse of process, c. 93A violations, and intentional interference with advantageous business relationship. Cabletron counterclaimed for three counts of breach of contract, indemnification, abuse of process, interference with advantageous contractual and business relations, c. 93A violations and breach of the implied covenant of good faith.
Cabletron moves and Proteon cross-moves for summary judgment on Proteon’s unjust enrichment claim. In addition, Digital moves for summary judgment on the grounds that it is entitled to judgment as a matter of law because Proteon cannot prove damages flowing from any breach of Section 20.4 of the License Agreement.
For the reasons stated herein, Cabletron’s motion for summary judgment is DENIED. Proteon’s cross-motion for summary judgment is DENIED. Digital’s motion for summary judgment is DENIED.
BACKGROUND
I. Factual Background[1]
The following facts are undisputed. Proteon and Digital entered into a License Agreement on August 23, 1994 and amended it on June 30, 1995. Pursuant to this agreement, Proteon licensed certain technology to Digital in return for the payment of certain license fees. The License Agreement, in Sections 20.2 and 20.3, authorizes Digital to assign its rights under the License Agreement without the consent of Proteon. Digital had made all license fee payments to Proteon, as required under the License Agreement, prior to November 27, 1997. On November 27, 1997, Digital and Cabletron entered into an agreement (“Asset Purchase Agreement”) regarding Cabletron’s purchase of Digital’s Networks Products Division. The Digital-Cabletron Asset Purchase Agreement included the assignment of Digital’s rights under the License Agreement. Digital never obtained Proteon’s consent to this assignment. The Digital-Cabletron transaction closed on February 7, 1998.
II. Procedural History
These present motions before the court are the third round of summary judgment motions filed in this case. On December 31, 1998, in a Memorandum of Decision and Order on Plaintiffs Motion to Dismiss and Cross-Motions for Partial Summary Judgment, this court (Smith, J.), allowed Cabletron’s motion for summary judgment on Proteon’s claim of unjust enrichment; denied Cabletron’s motion for summary judgment on its counterclaims of breach of contract, Counts I-IV, and its counterclaims of abuse of process, interference with advantageous contractual relationships, violation of c. 93A and breach of its duty of good faith and fair dealing; and denied Proteon’s motion to dismiss Cabletron’s claims pursuant to G.L.c. 231, §59H. As to the motions regarding the claims between Proteon and Digital, the court denied Digital’s motion for summary judgment as to the breach of the License Agreement and allowed summary judgment as to the breach of the Brouter’s Agreement and the c. 93A claim. Further, the court denied Proteon’s motion to dismiss Digital’s claims pursuant to G.L.c. 231, §59H. [9 Mass. L. Rptr. 445 (March 15, 1999).]
On March 19, 1999, Proteon filed a motion for reconsideration of the court’s order granting Cabletron’s motion for summary judgment as to the unjust enrichment claim. The court (Smith, J.) allowed the motion.[2] In addition, on March 22, 1999, Digital filed a motion for reconsideration, which the court (Smith, J.) denied.
On April 20, 1999, Digital filed a Second Motion for Summary Judgment on Count I of Proteon’s complaint asserting that, even if Proteon is able to prove that Digital breached the License Agreement by failing to retain the Section 20.2 rights in the licensed technology sufficient to support and maintain the installed base of products in assigning its rights under the *656 License Agreement to Cabletron, Proteon cannot prove that it has suffered damages from the alleged breach because Digital’s decision not to retain the Section 20.2 rights did not affect the parties’ ultimate conduct in anyway. The court (Sosman, J.) denied this motion, but stated that ”[i]f the assignment without Proteon’s consent is the breach of contract, then Proteon must show damages flowing from the assignment. It does not have to show damages flowing from the failure to bring the assignment within a category that would not have required Proteon’s consent.” The court also stated that Digital may file for summary judgment on the issue of damages that “would or would not flow from a breach of Section 20.4 of the License Agreement.” The aforementioned motions are now before this court.
DISCUSSION
I. Proteon’s Motion to Strike Affidavit
Proteon moves to strike the affidavit of Jeffrey Alan Simes (the “Simes Affidavit”) filed at the hearing on December 10, 1999 in support of Digital’s Supplemental Motion for Summary Judgment. Proteon asserts that the Simes Affidavit is in disregard of Superior Court Rule 9A, contains editorial comments, interpretations and summaries of deposition testimony and is misleading. This court finds that there is no basis for striking the Simes Affidavit. Although the portions of the deposition[3] referred to in the Simes Affidavit are highly redacted, the entire deposition, without redac-tions, is available to the court in the summary judgment record. The Simes Affidavit merely highlights portions of the deposition which Digital deems most important and relevant to its Supplemental Motion for Summary Judgment. Thus, the Simes Affidavit merely provides supporting documentation for a proposition previously asserted by Digital, specifically, that Pro-teon has not suffered any damages as a result of the alleged breach of contract. At the hearing on December 10, 1999, all parties were given additional time to file supplemental materials concerning any aspect of the motions then being considered. Proteon filed a Memorandum of December 15, 1999, but made no mention in it of Capone’s deposition testimony and Proteon has not filed any counter-affidavit. For these reasons, Proteon’s motion to strike the Simes Affidavit is DENIED.
II. Motions for Summary Judgment
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Where the parly moving for summary judgment does not bear the burden of proof at trial, the movant must submit affirmative evidence negating an essential element of the nonmoving party’s case to show that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Additionally, in ruling on a motion for summary judgment, the “record facts [are credited] most favorably to the party opposing the motion.” Sullivan v. Boston Gas Co., 414 Mass. 129, 130 n.2 (1993).
A. Cabletron’s Motion for Summary Judgment
Proteon alleges that Cabletron was unjustly en- . riched by its receipt, as a purchaser of Digital’s rights under the License Agreement, of Proteon’s proprietary information without Proteon’s consent. This court, (Smith, J.), has already determined that the License Agreement assignment between Digital and Cabletron did require Proteon’s consent.[4] Now Cabletron asserts that it purchased the License Agreement for good value and in good faith and therefore, by law, is insulated from Proteon’s claim of unjust enrichment.
The parties do not dispute that Cabletron purchased the rights from Digital for good value. Proteon, however, asserts that the purchase lacked good faith because Cabletron knew that the License Agreement assignment required consent by Proteon. A good faith purchaser is one who purchases assets for value, without fraud, misconduct, or knowledge of adverse claims. See Oakville Development Corp. v. Federal Deposit Ins. Corp., 986 F.2d 611, 613 (1st Cir. 1993). To be a good faith purchaser, one must be honest, but is not required to exercise due care. Dion v. Silver City Dodge, 398 Mass. 58, 60 (1986). A party has notice of a fact when it has reason to know of it, based on all the information at its disposal. Demoulas v. Demoulas Supermarkets, Inc., 424 Mass. 501, 508 (1997), citing Michelin Tires (Canada) Ltd. v. First Nat’l Bank of Boston, 666 F.2d 673 (1st Cir. 1981). See also G.L.c. 106, §1-201(25).[5]
This court finds that Proteon has raised genuine issues of material fact as to whether or not Cabletron was on notice of Proteon’s potential claim against Cabletron that any assignment from Digital to Cablet-ron required Proteon’s consent. “In some instances, notice is measured by an objective standard, as a matter of law, because if a person has actual notice of some facts or circumstances, a court may find an objective reason to know another fact.” Demoulas v. Demoulas, 428 Mass. 555, 576 (1998). There is evidence in the summary judgment record that Cabletron personnel and its counsel were on notice of the contract language between Digital and Proteon, which stated that except in certain circumstances, Proteon’s written consent to an assignment was necessary. The summary judgment record also demonstrates that Cabletron was aware of a potential lawsuit by Proteon against Digital for further royalties. While knowledge *657 of one claim does not in any way suggest knowledge of a different claim, the issue here is whether Cablet-ron is entitled to bona fide purchaser status. Although neither the language of the contract, nor any communication from Proteon, directly suggested to Cabletron that any failure by Digital to obtain Proteon’s consent might warrant a claim against Cabletron, Cabletron still may not be entitled to bona fide purchaser status. From all the facts and circumstances known to Cablet-ron personnel and its counsel, there remains a question of fact as to whether Cabletron had reason to know of the potential claim by Proteon against Cablet-ron. “A party claiming bona fide purchaser status bears the burden of persuasion on the issue. In doing so, the party must convince the finder of fact that he or she undertook the transaction in good faith without notice of adverse claims ... A party must show that he or she had a subjective honest belief in the legitimacy of the transaction ... a claim of bona fide purchaser status can be negated if the purchaser has an awareness, short of actual knowledge, of an adverse claim.” Id. at 575-76.
The fact that Proteon had not, before the February 7, 1998 closing date, articulated a specific claim as to Cabletron concerning Digital’s assignment to Cablet-ron does not establish that Cabletron is a good faith purchaser. Cabletron “cannot establish [itself] as [a] bona fide purchaser simply by claiming that they were ’’blissfully unaware" of what [Digital] might have been doing. ‘If a person confronted with a state of facts closes his eyes in order that he may not see that which would be visible and therefore known to him if he looked, he is chargeable with ‘knowledge’ of what he would have seen had he looked.’ “ Id. at 577, quoting West’s Case, 313 Mass. 146, 151 (1943). See also Nycal Corp. v. KPMG Peat Marwick LLP., 426 Mass. 491, 498-99 (1998); Van Christo Advertising, Inc. v. M/A-COM/LCS, 426 Mass 410, 417 (1998) (claim of willful ignorance of information will not be excused if information could have been known had the person simply not consciously disregarded it). Although neither the language of the contract nor any communications from Proteon directly suggested to Cabletron that any failure by Digital to obtain Proteon’s consent might warrant a claim against Cabletron, there remain questions of material fact on the legal issue of whether Cabletron is a legitimate bona fide purchaser. See Demoulas v. Demoulas, 428 Mass. 555 (1998) (reviewing finding that parties were not bona fide purchasers as a matter of law based on the underlying facts in the claim).
For these reasons, Cabletron’s motion for summary judgment on Count III of the complaint, unjust enrichment, is DENIED.
B. Proteon’s Cross-Motion for Summary Judgment
Proteon’s cross-motion for summary judgment relies on the same set of facts and issues as Cabletron’s motion for summary judgment. Specifically, Proteon asserts that by purchasing the assignment of Proteon’s Source Code under the Licensing Agreement, which required Proteon’s consent, Cabletron was unjustly enriched. As previously stated, there are genuine issues of material fact on the legal issue of whether or not Cabletron was a bona fide purchaser. There is evidence in the summary judgment record that Cabletron personnel and its counsel were on notice of the specific contract language requiring Proteon’s consent. Proteon asserts that Cabletron was on notice of the claim because it and its attorneys had the Licensing Agreement, and therefore knew of Section 20.4, which indicated that assignment required written consent. However, Proteon has failed to establish that Cabletron was on notice of a specific claim by Proteon against Cabletron concerning that consent. That Cabletron may have been on notice at the time it purchased from Digital that Proteon may have wanted further royalties from Digital is not evidence that Cabletron was aware of a claim that Proteon had against Cabletron because Proteon claimed its consent was needed for Digital’s assignment. Requiring one party to a contract to obtain the consent of the other party does not necessarily, in the event of a breach, put a third party on notice of the potential for a claim against the third party. In any event, that Cabletron had, by itself or through its attorneys, knowledge of the License Agreement, is not sufficient to establish that, as a matter of law, Cabletron was not a bona fide purchaser. As there are genuine issues of material fact on the legal issue of whether or not Cabletron was a bona fide purchaser, this matter is not appropriate for summary judgment. Accordingly, Proteon’ s cross-motion for summary judgment is DENIED.
C. Digital’s Motion for Summary Judgment[6]
Digital now moves for summary judgment on the issue of damages. As suggested in Judge Sosman’s endorsement denying Digital’s second summary judgment motion, Digital moves for summary judgment on the grounds that it is entitled to judgment as a matter of law because Proteon cannot prove damages flowing from any breach of Section 20.4 of the License Agreement.
Section 20.4 of the License Agreement, generally entitled “Assignment” reads as follows:
Except as provided in this Section 20, this Agreement shall not be assigned by either parly without the written consent of the other.
The plain language of Section 20.4 makes it clear that an assignment will generally require the consent of Proteon. However, in order to succeed on Count I, its breach of contract claim, Proteon must prove that it suffered damages from the alleged breach.
Digital asserts three reasons why Proteon either is not entitled to damages or cannot show damages *658 under the alleged breach. First, Digital argues that Proteon has suffered no damages from the assignment because it received everything that it bargained for under the contract and that it is pure speculation to assume that, but for the assignment, Proteon would have obtained an additional license fee from Cablet-ron. Second, Digital argues that any damages award would give Proteon an unwarranted windfall. Digital asserts that the primary concern of Proteon regarding assignment was that it receive one royalty payment for each entity that was using Proteon technology.[7] Therefore, Digital argues, since the rights were only assigned to a single assignee, Proteon did not require or expect further payment. Any additional monies from the defendants, Digital argues, would make Pro-teon far better off with a “breach” than it could ever have received by full performance. Digital argues that, at any given point in time, there has never been more than a single entity making use of the licensed technology, either Digital or Cabletron, Proteon is not entitled to more than the single royalty payment it has already received. Third, Digital asserts that Proteon’s theory of the case is at odds with the intent of the parties. Digital argues that the License Agreement, on its face, contemplates and permits the assignment of rights in connection with a sale of all or part of the Digital’s internetworking business. Furthermore, Section 20.2 demonstrates that there was recognition between the parties of the possibility of such a sale and that there was no intention between the parties under those circumstances to require either payment to or approval by Proteon. Digital asserts that because the substance of the assignment was acceptable to Proteon, it would be inappropriate to award damages.
Digital’s motion is in essence, an assertion that even if Digital breached the Agreement, Proteon cannot prove damages. Any damages that the plaintiff claims to have suffered must be computed by rational methods upon a firm, factual basis. A mathematical certainty in measuring damages, however, is not a prerequisite for recovery. Rombola v. Cosindas, 351 Mass. 382 (1966); Lufkin’s Real Estate, Inc. v. Aseph, 349 Mass. 343, 346 (1965); Novel Iron Works, Inc. v. Wexler Constr. Co., Inc., 26 Mass.App.Ct. 401, 412 (1988); Gilmore v. Century Bank & Trust Co., 20 Mass.App.Ct. 49 (1985).
Proteon asserts that if Digital had not breached the License Agreement by transferring Proteon’s software source code to Cabletron, then Cabletron would have had to obtain a license directly from Proteon in order to use that technology in its own internetworking business. Proteon asserts that it has been damaged “by at least the amount of the substantial anticipated fee that Cabletron would have had to pay for such a license.” “A party may recover for lost profits as long as the value of those profits may be determined, as a practical matter, with a fair degree of certainty. .. The amount of lost profits may be ascertained by reference to some definite standard, either of market value, established experience, or direct inference from known circumstances.” Our Lady of the Sea Corp. v. Borges, 40 Mass.App.Ct. 484, 487-88 (1996) citing Novel Iron Works Inc. v. Wexler Constr. Co., 26 Mass.App.Ct. 401, 412 (1988). “Without doubt, there must be a satisfactory evidentiary foundation to support a claim of lost profits.” Graves v. R.M. Packer Company Inc., 45 Mass.App.Ct. 760, 769 (1998). See also Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488 & n.4 (1994); Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 28 n.38, cert. denied, 522 U.S. 1015 (1997) (the evidence must afford a “basis for a reasonable judgment”).
Although a nonmoving party cannot defeat the •motion for summary judgment by resting on its pleadings and mere assertions of disputed facts to defeat the motion, LaLonde v. Eissner, 405 Mass. 207, 209 (1989), a party moving for summary judgment who does not bear the burden of proof at trial, in this case, Digital, must demonstrate the absence of a triable issue and can do so either by submitting affirmative evidence negating an essential element of the nonmov-ing party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Digital has failed to do either.
While this may be a close case, this court finds that Proteon has raised a genuine issue of material fact as to whether or not it suffered damages under the alleged breach of the Licensing Agreement. While the summary judgment record demonstrates that Proteon received all of the benefits under the contract that it expected, it is less than clear whether or not Proteon can establish any further damages, in the form of fees, lost profits or lost economic opportunity, as a result of Digital’s breach. It asserts that it has been damaged by at least the amount of the substantial anticipated fee that Cabletron would have had to pay for the license had Digital not breached the contract and assigned the license to Cabletron directly. In reaching this type of decision, the court must look at “the agreement taken as whole” as well as “surrounding facts and circumstances” to determine the correct meaning and impact of a contract. Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45-46 (1991). “The intent of the parties entering into the contract must be gathered from construing the contract as a whole and not by placing special emphasis on any one part.” Lydon v. Allstate Ins. Co., 5 Mass.App.Ct. 771 (1977). Digital assumes, wrongly, that if there was a breach by Digital of the consent provision, that Proteon’s claim for damages would be limited to “Proteon’s rights or benefits under the Licensing Agreement.” If there is a breach, which a prior court has already determined, then Proteon may be entitled to recover the monetary value of the breach. This court finds that Digital has failed to establish that *659 there are no questions of material fact as to Proteon’ s claim of damages, and therefore summary judgment is precluded at this time. Therefore, Digital’s motion for summary judgment is DENIED.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
1. Proteon’s Motion to Strike the Affidavit of Jeffrey Alan Simes is DENIED.
2. Cabletron’s Motion for Summary Judgment on the claim of unjust enrichment is DENIED.
3. Proteon’s Cross-Motion for Summary Judgment on the claim of unjust enrichment is DENIED.
4. Digital’s Motion for Summary Judgment on damages under Section 20.4 is DENIED.

 The factual background is adopted and incorporated from the Memorandum of Decision and Order on Plaintiffs Motion to Dismiss and Cross-Motions for Partial Summary Judgment (Smith, J.).

 In substance, the court vacated its decision on Cabletron’s motion for summary judgment and extended the discovery deadline for 90 days to permit Proteon to conduct discovery on its claim of unjust enrichment. The court noted that Cabletron could renew its motion for summary judgment after the discovery deadline closed.

 The deposition referred to in the December 9, 1999 Simes Affidavit is that of Daniel Capone, Jr., Proteon’s former Chief Executive Officer. Capone's deposition took place on August 20, 1999, after Digital’s Supplemental Motion for Summary Judgment was filed on June 28, 1999.

 See Memorandum and Order on Plaintiffs Motion to Dismiss and Cross-Motions for Partial Summary Judgment. (December 31, 1998) (Smith, J).

 G.L.c. 106, §1-201 reads, “A person has ‘notice’ of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person ‘knows’ or has ‘knowledge’ of a fact when he has actual knowledge of it. ‘Discover’ or ‘learn’ or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this chapter.”

 At the hearing on December 10, 1999, Digital submitted a one-page untitled paper suggesting that it was acceptable nunc pro tunc as an addendum to the Asset Purchase Agreement between Cabletron and Digital. That paper states:
For good and valuable consideration the sufficiency of which is hereby acknowledged, Seller and Buyer hereby agree to amend the Purchase Agreement by adding the following provision 2.1.1 to the Purchase Agreement, and that such provision will be treated as if it had been included in the Purchase Agreement as of February 7, 1998, the date of the Closing.
2.1.1 Retention of Rights
Notwithstanding Seller’s assignment to Buyer of the Software Source Code License Agreement between Seller and Proteon, Inc. dated June 30, 1995, Seller hereby retains under the Software Source Code License Agreement between Seller and Proteon, Inc. dated June 30, 1995, only rights in the Licensed Technology sufficient to support and maintain its installed base of Products existing as of February 7, 1998. Nothing in this retention of rights is intended to, nor does, preclude Buyer from exercising all rights under the Software Source Code License Agreement, including those rights which Seller has retained for itself, or prevent Buyer from supporting and maintaining the then installed base of Products.
Apparently Digital, understanding that there is at least a colorable basis for Proteon’s claim that Digital breached Section 20.4 of the Agreement, submitted this paper seeking to put the assignment within Section 20.2 of the Agreement. However, it is not this court’s obligation to write or rewrite contracts. There is no reason at this time for the court to endorse or take any position concerning Digital’s proffer to correct what Digital refers to as a “technical” defect in Digital’s assignment to Cabletron. See Digital’s Reply Memorandum in Support of its Supplemental Motion for Summary Judgment, p. 3.

 Digital argues, for example, if Digital split into five companies, each of which retained and used the licensed technology, Proteon would want five royalty payments.