LUCIENE F. SCHROEDER *vs.* KNOWLES B. LAWRENCE.

Norfolk. January 5, 1977. — February 15, 1977.

Present: QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Negligence,* Doctor. *Practice, Civil,* Summary judgment.

In an action against a surgeon for failing to inform the plaintiff of the risks of surgery he performed on her, there was no error in the denial of the plaintiff's motion for summary judgment where her affidavit in support of the motion contained only her bare assertion that if informed of the risk she would have declined the operation and where the degree of significance of the risk was in dispute. [2-5]

TORT. Writ in the Superior Court dated May 22, 1968.

A motion for summary judgment was heard by *Brogna, J.,* and the case was heard by *Rutledge, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Ralph C. Copeland* for the plaintiff.

*Robert G. Conley, Jacob J. Locke & David M. Gould,* for the defendant, submitted a brief.

1

KAPLAN, J.    At the suggestion of her family doctor, the plaintiff Luciene F. Schroeder, then thirty-two years of age, complaining of a lump in her throat, went to see the defendant Knowles B. Lawrence, a general surgeon with a special interest in cancer and head and neck surgery. The defendant examined the plaintiff on May 17, 1966, and diagnosed her condition as an adenoma ("nontoxic" tumor) occupying most of the left lobe of the thyroid gland, and enlarging. In a letter of May 20, 1966, the defendant advised an operation to remove the adenoma. On July 6, 1966, he performed the indicated operation on the plaintiff. His diagnosis had been correct.

Following the operation the plaintiff complained of a tender throat and hoarse voice. The hoarseness continued as a permanent condition although mitigated over time.

On May 22, 1968, the plaintiff commenced the present action. The first and third counts of the substitute declaration, alleging negligence in the medical services provided and in the conduct of the operation, were for practical purposes abandoned. The second count charged the defendant with negligence in recommending an operation while failing to inform the plaintiff of the risks of the surgery or of possible alternative treatments. Relying on the recommendation, the plaintiff alleged, she submitted to the surgery, and in consequence she suffered injury to her vocal cord impairing her ability to speak, for which she sought money damages.[1]

With the action at issue on the defendant's answer containing denials, it was not until November 19, 1974, that the plaintiff moved for summary judgment as to liability under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), reserving the issue of damages. We may condense the substance of the papers filed in support of and in opposition to the motion.

The plaintiff asserted in her affidavit that the defendant

---

[1] A fourth count was by her husband for his consequential damages.

had not warned her of the risks of the operation, and that, had she been told that injury to her vocal cords was such a risk, she "would not have then, under those circumstances, consented to the operative procedure." Dr. Louis E. Griffey, an otolaryngologist, swore that he examined the plaintiff on September 15, 1969, and found that her left vocal cord had a movement on abduction about one-half that of her normal right vocal cord; in his opinion the condition was permanent and resulted from the operation of July 6, 1966. Dr. Melvin H. Sher, a general surgeon, gave affidavit that in his opinion any operative procedure on the thyroid gland involves an inherent and well known risk of injury to the recurrent laryngeal nerve, and if such injury occurs, the result is paralysis, partial or total, of the vocal cord or cords.

The defendant filed his own affidavit and was deposed by the plaintiff. He swore that it was his "common practice" to discuss risks or alternatives with his patients destined for surgery; he might well have done so in the plaintiff's case, but had no notation of it.[2] In his opinion the operation to remove the adenoma carried some risk of injury to the vocal cords by reason of possible damage to the recurrent laryngeal nerve, but it was not a high risk. In about 150 similar operations performed by him, there had been no such casualty. He saw no sound alternative here to surgical removal of the adenoma. He believed nothing he did in the course of the operation would account for the kind of injury complained of; it may have arisen because of the endotracheal anesthesia, or a post-surgical swelling due to local blood collection around the thyroid, or to some local tissue involvement. He said that in all things he exercised his best medical judgment and did not depart from accepted medical practice.

---

[2] It may be noted that in his letter of May 20, 1966, the defendant invited the plaintiff to ask any questions she might have, and said he would also be glad to speak to her husband. It is indicated that a copy of the letter was sent to the plaintiff's family physician.

A judge of the Superior Court on January 23, 1975, denied the motion for summary judgment. When the case was called for trial on November 7, 1975, the plaintiff waived a jury (as did the defendant) and invited the entry of judgment for the defendant in order, as the plaintiff's counsel said, to achieve the finality needed for appeal, where he would be urging that it was error to deny the summary judgment motion. He added: ". . . I would like to represent to the Court that the plaintiff is not in the position in my opinion to present sufficient evidence in a trial on the merits of this case, live testimony, which would warrant a finding for the plaintiff." From the judgment entered accordingly for the defendant, the plaintiff appealed to the Appeals Court, and we brought the appeal here on our own motion.

In view particularly of counsel's quoted remark, it is clear that if the denial of the summary judgment is now upheld as correct, the plaintiff's case is at an end; she is not entitled to a remand for trial. Some argument is made that in the light of that remark the question of the correctness of the denial should be held foreclosed to the plaintiff on this appeal, as it might well have been if, after the denial of summary judgment, the case had been fully tried below with judgment for the defendant;[3] but we shall assume arguendo that the question is open for decision here.

The second count of the declaration took as its major premise a doctrine of "informed consent," that — to speak in general terms — a surgeon is under a duty to use due care in informing his patient of the risks of a recommended operation, so that the patient may exercise an informed judgment in electing to give or withhold his consent to the procedure. As a copious literature discloses, the doctrine

---

[3] Cf. *Jones* v. *United States,* 466 F.2d 131, 136 n.3 (10th Cir. 1972); *Goodyear Tire & Rubber Co.* v. *Jones,* 433 F.2d 629, 632 (10th Cir. 1970); *Boyles Galvanizing & Plating Co.* v. *Hartford Accident & Indem. Co.,* 372 F.2d 310, 312 (10th Cir. 1967); *Home Indem. Co.* v. *Reynolds & Co.,* 38 Ill. App. 2d 358, 365-367 (1962); Annot., 15 A.L.R.3d 899, 922-929 (1967).

has achieved variant expression and content in the jurisdictions in which it is recognized and applied.[4] We have not had occasion to analyze these precedents or to take a measured position on "informed consent" (cf. *Haggerty* v. *McCarthy*, 344 Mass. 136 [1962]), and we resist all temptation to do so here.

But no more than a shallow immersion in the doctrine is needed to dispose of the summary judgment issue against the plaintiff. Whatever the precise definition or scope of the surgeon's duty to provide information to the patient, the patient would be required to show, in order to connect any breach of duty to the ultimate injury, that, had the proper information been provided, he or she would have refused the operation; indeed one can well argue that the patient must go further and establish that in all the circumstances a reasonable person would have refused it. See *Canterbury* v. *Spence*, 464 F.2d 772, 790-791 (D.C. Cir. 1972) (compendious opinion on many aspects of "informed consent"). The latter proposition the plaintiff failed altogether to establish in her papers on the motion; as to the former, she likewise failed, since her bare assertion that she would have declined the operation did not carry its own passport of convincingness, despite the sincerity with which she might put it forward long after the event. Thus summary judgment was not appropriate. See 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2726 (1973). So also, on any view of a doctrine of "informed consent," a plaintiff, to succeed, must show that the undisclosed risk was material, and that it materialized (see the discussion in *Canterbury* v. *Spence, supra* at 786-788, 791-792); but the question of the degree of significance of the risk, turning on expert opinion, was in dispute here.

---

4 See 2 D.W. Louisell & H. Williams, Medical Malpractice §§ 22.01-22.09 (1976); Waltz & Schenneman, Informed Consent to Therapy, 64 Nw. L. Rev. 628 (1970); McCoid, The Care Required of Medical Practitioners, 12 Vand. L. Rev. 549 (1959); Comment, New Trends in Informed Consent?, 54 Neb. L. Rev. 66 (1975); Comment, Informed Consent in Medical Malpractice, 55 Calif. L. Rev. 1396 (1967).

We need not carry the argument further. The truth is that, in the nature of the grounds on which the doctrine must go, a case for a summary judgment of liability can be made out only in an exceptional situation. The plaintiff points out that an Ohio trial court granted summary judgment for the plaintiff in a case resembling the present (*Congrove* v. *Holmes,* 37 Ohio Misc. 95 [C.P. 1973]), but the discovery process may have gone further there than here, and the result appears dubious in any event.

*Judgment affirmed.*