Margaret C. DELANEY, et al
vs.
Martin J. DUNN, et al

Civ. A. No. 679038

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

October 20, 1980

Coombs, Connoly for plaintiff.
Jackson, Steadman, Dunn for defendant.

## MEMORANDUM AND ORDER

In this action for dental malpractice, against an orthodontist and an oral surgeon, the jury returned a verdict for plaintiff in the amount of $10,000 against the surgeon ("defendant"). Defendant moved for a directed verdict at the close of all the evidence, and seasonably moved for judgment notwithstanding the verdict (or, in the alternative, for a new trial).

### I. Facts

Viewed, as the Court must view it, in the light most favorable to plaintiff, and favoring plaintiff with all reasonable inferences, J. Smith, and H. Zobel, **Rules Practice**, § 50.2, the evidence warranted the jury's finding these facts:

Plaintiff then aged 16, consulted defendant in connection with what she and her mother perceived to be a crowding together of certain of plaintiff's teeth, the upper right first bicuspid and the adjacent right canine (or eye tooth). Defendant, an oral surgeon, referred plaintiff and her mother to an orthodontist (who was also a defendant here). He concluded that, because the two teeth were growing into an opening only large enough for one-and-one-half teeth, one of the teeth should be extracted. The orthodontist, in turn, referred plaintiff and her mother back to defendant, at the same time requesting defendant, in writing, to extract the upper right first bicuspid (Ex. 2).

Defendant made no additional examination of plaintiff's teeth, but scheduled a date for the extraction. At the appointed time, plaintiff and her mother came to defendant's office. Neither of them had ever discussed with defendant, nor did defendant ever mention to either of them, the possibility of extracting any tooth other than the upper right first bicuspid.

In accordance with his usual practice, and with the consent of plaintiff and her mother, defendant administered a general anesthetic (sodium pentathol) to plaintiff while she was seated in an ordinary dental chair in a treatment room at defendant's office. Plaintiff's mother, meanwhile, was seated in defendant's waiting room (some 45-50 feet from the treatment room), where she remained throughout the procedure.

Defendant was assisted by two dental assistants, who were in the treatment room with him from the commencement of the administration of the anesthetic and remained there during the entire procedure.

After the anesthetic took effect, defendant began inspecting both the tooth (the bicuspid) he was to extract and the tooth which was, so to speak competing with it for space (the canine). He concluded that although the designated tooth (the bicuspid) was a sound, healthy tooth, its neighbor (the canine) was considerably decayed. Indeed, he believed that extraction of the bicuspid coupled with failure to extract the canine would (because of the canine's decayed condition) soon and inevitably lead to a two-tooth gap.

Without either reviving plaintiff, or conferring with her mother, or even sending one of his assistants to the waiting room to summon the mother, defendant proceeded to extract the canine. In doing so, he did not have the consent of either plaintiff or her mother.

Neither plaintiff nor her mother knew about the extraction until shortly after it occurred, when the mother, accompanying plaintiff in the recovery room, observed that the bicuspid remained unextracted.

The mother immediately sought out defendant and asked the reason for the extraction. He told her the canine was decayed. When the mother asked to see the extracted tooth, defendant said that it cracked during extraction, and that he had discarded the fragments. It should be noted

that the mother testified that the tooth had, **in situ**, been "perfect". Thus whether or not defendant's failure to produce the extracted canine (or its fragments) warranted an inference that the tooth was in fact not decayed, the jury was entirely justified in crediting the mother's testimony or at least decling to credit defendant's. His was the only evidence that the tooth was in fact decayed.

## II. Trial

After the court directed a verdict in favor of the defendant orthodontist, the matter was submitted to the jury on the sole issue of consent **vel non**. At defendant's request, the court instructed the jury that the presence of an unexpected condition requiring immediate action would (if the jury found it to have existed) excuse his failing to obtain consent. That portion of the court's charge dealing with the liability issues read thus:

Now, this case is very important to the parties, yet at the same time, factually, it's really quite simple. What you really have to decide is whether Dr. Dunn obtained the consent of Mrs. Delaney or Ms. Delaney before extracting the canine. There's no question that he extracted the canine tooth. The question is did he obtain the consent of Ms. Delaney or Mrs. Delaney before doing it, and that's for you to decide, as I have said, by weighing the evidence, and it is the plaintiffs' burden to persuade you by a preponderance of the credible evidence.

Now, if you decide that he did not obtain that consent before extracting the canine, then you have to decide whether he was confronted with an unanticipated, that is unexpected, condition and an unexpected condition requiring immediate action, immediate action for the maintenace of the health of his patient, Ms. Delaney, requiring an immediate action in such a way that it prevented his obtaining the consent before he performed the extraction.

Did he obtain the consent? If he didn't was it — was he confronted with an unanticipated health-affecting condition which prevented his obtaining the

consent before he went ahead with the extraction? Those are the questions that you will decide. Those are the questions that deal with what we refer to as the liability, the responsibility part of the case.

Neither side objected to the charge as given, although the court afforded counsel an opportunity to make objections out of the jury's hearing, Mass. R. Civ. P. 51; J. Smith and H. Zobel, **Rules Practice**, § 51.6.

## III. Discussion

In the circumstances, the question before the jury was not the absence of "informed consent", see, **Schroeder v. Lawrence**, 372 Mass. 1, 5 (1977). The concept of "informed consent" covers the duty of a surgeon "to use due care in informing his patient of the risks of a recommended operation, so that the patient may exercise an informed judgment in electing to give or withhold [her] consent to the procedure," **id.** at 4. Typically a case involving that principle concerns a patient who has voluntarily submitted to a given procedure, only to learn later that it entailed risks (and consequences) of which the treating physician had not informed or warned her.

The scenario in defendant's office was quite different. There, plaintiff was not the surprised victim of effects whose possibility defendant, in obtaining permission to operate, had never disclosed. Rather, she was the subject of an operation which she and her mother had not authorized at all.

Thus Massachusetts' failure to endorse the doctrine of "informed consent", **id.** at 5, is irrelevant to the present case. Plaintiff's theory of recovery rested on proof of a wholly unconsented-to touching. The jury's finding in plaintiff's favor on that account finds ample support in the evidence.

On the question of damages, plaintiff is less favorably placed. Lacking admissible evidence of the need for or cost of additional treatment to correct the effects of defendant's act, the jury's finding of damages rested entirely on proof of the disfiguring effect of the extraction and the embarrassment it caused plaintiff. The only pain of which plaintiff testified was that associated with the extraction; she introduced no evi-

dence suggesting she would not have suffered to the same degree had the correct tooth been removed.

For present purposes, one must assume, as mentioned earlier, that the jury credited the mother's testimony of the tooth's having been "perfect" and declined to credit defendant's testimony that it was badly decayed, a discrimination supported by defendant's failure to exhibit the tooth upon request.

Even so, the size of the verdict was palpably disproportionate to the damages proved. Granted, translating the nature of the loss sustained into dollar terms is an effort incapable of precision or measurement. Still, an award of $10,000 for the loss of a single tooth is so excessive as to shock the Court's conscience. Bearing in mind that the loss of a tooth was orthodontically prescribed, and that plaintiff made no claim that defendant's extraction of the canine was improperly performed, the Court concludes that the award resulted wholly or partly from the jurors' partiality or prejudice. It is appropriate to add that during this testimony, defendant's personality and demeanor might — in the Court's observation — very well have kindled the jury's dislike. While assessment of demeanor is a valid component of the jury's role in determining credibility, it is apparent that here it improperly affected the measure of damages (a matter as to which defendant's testimony and demeanor were irrelevant). At the same time, because the evidence so abundantly supported a finding of liability, the Court has no difficulty concluding that any negative feelings the jury may have entertained concerning defendant did not wrongly affect the determination of liability.

On all the evidence, the Court concludes that $4,000 is the maximum that a jury considering the instant action could award unless improperly influenced by partiality or prejudice. Plaintiff has been afforded an opportunity to remit so much of the verdict as exceeded that amount, Mass. R. Civ. P. 59(a), and has filed an appropriate document of remittitur.

## ORDER

According, it is Ordered, that judgment enter for plaintiff in the amount of $4,000, with interest and costs; defendant's motion is **Denied** in its entirety.

Hiller B. Zobel
Justice of the Superior Court