MARGUERITE E. MOOD & another[1] vs. THOMAS B. KILGORE
& another.[2]

Essex.   May 5, 1981. — August 25, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Appeal.  *Medical Malpractice,* Appeal, Bond.

A plaintiff in a medical malpractice action who failed to appeal from a fi-
nal judgment for the defendants within the time permitted by
Rule 4 (a) of the Massachusetts Rules of Appellate Procedure was
barred from challenging an order of the judge, entered subsequent to
the final judgment, making the plaintiff's bond, filed pursuant to
G. L. c. 231, § 60B, available to cover the costs of the defendants.
[462-465]

CIVIL ACTION commenced in the Superior Court on
March 12, 1976.

The case was tried before *Coddaire,* J.  Certain motions
filed after judgment were heard by *Sherman,* J., a District
Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Fred Pearlmutter* for the plaintiffs.

*John F. Finnerty, Jr.,* for the defendants.

LYNCH, J.  The appellants dispute an order of a judge in the
Superior Court making a bond filed pursuant to G. L. c. 231,
§ 60B,[3] available to cover the costs of the defendants, pre-

---

[1] The motion of Sentry Insurance A Mutual Company to join with the
plaintiff as an appellant was allowed on August 7, 1980.  The term plain-
tiff as used herein refers to Marguerite E. Mood.

[2] Beverly Oral Surgery Associates, Inc.

[3] General Laws c. 231, § 60B, inserted by St. 1975, c. 362, § 5, reads
in pertinent part as follows: "Every action for malpractice, error or mis-
take against a provider of health care shall be heard by a tribunal consist-
ing of a single justice of the superior court, a physician licensed to practice

vailing parties in a malpractice action. We hold that the challenge is time barred under Mass. R. A. P. 4 (a), as appearing in 378 Mass. 924 (1979).

Only a brief recital of the facts is necessary. In March, 1976, Mood filed suit against the defendants, charging that a dental procedure performed by Dr. Thomas Kilgore had caused a paralysis of part of her face, with resulting disfigurement. Two theories of liability were proposed: first, that the injury was proximately caused by negligence in performing the oral surgery; second, that the plaintiff had not been properly informed of the possible effects of the course of treatment.[4] Beverly Oral Surgery Associates, Inc., Dr.

---

medicine in the commonwealth under the provisions of section two of chapter one hundred and twelve and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result.

" . . . .

"If a finding is made for the defendant the plaintiff may pursue the claim through the usual judicial process only upon filing a bond in the amount of two thousand dollars secured by cash or its equivalent with the clerk of the court in which the case is pending, payable to the defendant for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment. Said single justice may, within his discretion, increase the amount of the bond required to be filed. If said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed. Upon motion filed by the plaintiff, and a determination by the court that the plaintiff is indigent said justice may reduce the amount of the bond but may not eliminate the requirement thereof."

[4] In *Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 739 (1977), this court acknowledged the acceptance in many States of such a theory of recovery. In cases where recovery is sought against physicians for breach of contract, we have recognized that there are grave difficulties of proof. *Clevenger* v. *Haling*, 379 Mass. 154, 157-158 (1979) ("clear proof" required in an action for breach of contract to achieve a particular medical result); *Sullivan* v. *O'Connor*, 363 Mass. 579, 582-583 (1973). An action for lack of informed consent may present similar problems. We, therefore, continue to adhere to *Schroeder* v. *Lawrence*, 372 Mass. 1, 5 (1977), and do not at this time take a measured position on the viability or contours of a cause of action for lack of informed consent.

Kilgore's employer, was said to be subject to liability on the basis of respondeat superior.

A medical malpractice tribunal was convened pursuant to G. L. c. 231, § 60B. In a decision of November 4, 1976, the panel found that a "legitimate question of liability" was raised by the negligence claims, but rejected the counts based on a lack of informed consent.

The plaintiff filed a bond, obtained from Sentry Insurance A Mutual Company (Sentry Insurance), in order to maintain the latter claims despite the tribunal's negative findings.[5] Additionally, a notice of appeal was filed, although no action was taken to perfect any interlocutory appeal. In July, 1978, the malpractice panel filed an amended report which stated that its decision had been erroneously reported, and that while a "legitimate question of liability" existed on the informed consent counts, inadequate evidence had been presented to sustain the negligence claims. Mood was allowed to amend her bond, nunc pro tunc, which she did. No additional notice of appeal was filed.

A jury trial on all counts commenced in January, 1980, with verdicts for the defendants being returned on February 1. Judgments were entered the same day, and no appeal was then taken. On April 9, the defendants moved that the clerk of the court issue execution in the amount of $4,000, and that Sentry Insurance be required to cover its bond. These motions were allowed on May 13, 1980. Both Mood and Sentry Insurance appealed.[6] We transferred the appeal here on our own motion.

---

[5] There is some confusion in the record whether the plaintiff filed a single bond of $2,000 or two bonds, each for $2,000. The difficulty arises from the fact that although the initial report of the malpractice tribunal required the filing of two bonds, only one was posted. After the amended report the bond was "endorsed to provide indemnity as required by amended report of the medical tribunal in the above captioned case." The amended tribunal report tracked the language of the initial report and so also required two bonds, one for each defendant. Neither party on appeal has discussed this question; therefore, we do not consider the proper construction of the bond(s), the defendants having waived this claim by failure to assert it before this court.

[6] The core of the plaintiffs' substantive argument on appeal is that *Kapp v. Ballantine*, 380 Mass. 186, 192 (1980), allows a bond to be required

On its face the plaintiffs' appeal is barred by their failure to comply with the clear language of Mass. R.A.P. 4 (a), as appearing in 378 Mass. 924 (1979),[7] which requires that a notice of appeal be filed within thirty days of the entry of judgment. *Boat Mondego, Inc. v. Fulham Bros.*, 6 Mass. App. Ct. 958 (1978). This must of course be a final determination, interlocutory appeals in general being disfavored. *CUNA Mut. Ins. Soc'y v. Attorney Gen.*, 380 Mass. 539, 540-541 (1980). *National Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp.*, 379 Mass. 220, 222 n.2 (1979), cert. denied, 446 U.S. 935 (1980).

Two responses are made by the plaintiffs. First, that the notice filed after the tribunal's initial decision of November 4, 1976, has preserved a right to appeal. Second is a suggestion that "final judgment" on the plaintiff's obligation to pay on the bond did not occur until May 13, 1980, when the judge instructed the clerk to satisfy the defendants' costs out of the posted amount.

As regards the first argument, we are willing to treat Mood's notice of appeal from the initial determination of the tribunal as filed against the amended findings as well, given the possible confusion engendered by the panel's actions. From that point several interpretations of the plaintiff's actions are possible. The plaintiff may have been laying groundwork to invoke one of the two basic exceptions to the general prohibition of interlocutory appeals: (1) report to the Appeals Court by a trial judge (in this instance the judge presiding at the malpractice panel) of the merits of the order

---

only when a plaintiff has no viable theory of recovery against a defendant. Since either report of the tribunal found a purportedly valid theory of recovery, in the plaintiffs' view no bond should have been required. The defendants counter by contending that no cause of action for informed consent exists in the Commonwealth. As made clear in note 4, *supra*, we need not and do not reach that issue.

[7] Rule 4 (a) of the Massachusetts Rules of Appellate Procedure, as appearing in 378 Mass. 924 (1979), in relevant part, reads as follows: "In a civil case, unless otherwise provided by statute, the notice of appeal required by rule 3 shall be filed with the clerk of the lower court within thirty days of the date of the entry of the judgment appealed from . . . ."

requiring the filing of bonds, pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), see *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 468 (1975); (2) the granting of leave to appeal by a single justice of this court or of the Appeals Court, see *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464 (1980). Alternatively, Mood may have been attempting to ensure, pursuant to Mass. R. Civ. P. 46, 365 Mass. 811 (1974),[8] that the judge was aware of her objections, or she may have been acting cautiously to ensure her right to appeal when a final judgment did occur, see Mass. R.A.P. 3 (a), as appearing in 378 Mass. 924 (1979).[9]

However, the plaintiff never asked a single justice of this court or of the Appeals Court for leave to file an interlocutory appeal; nor was there any certification by a judge of the Superior Court. If, as appears likely, the goal of the notice was to ensure compliance with rule 46, this action was unnecessary to preserve the right to appeal. The purpose of rule 46 is, in the words of the reporter's notes, that one "need no longer mouth the magic word 'exception' to save his right to review a questionable ruling by the trial judge." Reporters' Notes to Mass. R. Civ. P. 46, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 166

---

[8] Rule 46 of the Massachusetts Rules of Civil Procedure, 365 Mass. 811 (1974), reads in part as follows: "Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

[9] Rule 3 (a) of the Massachusetts Rules of Appellate Procedure, as appearing in 378 Mass. 924 (1979), reads in part as follows: "A party need not claim an appeal from an interlocutory order to preserve his right to have such order reviewed upon appeal from the final judgment; but for all purposes for which an appeal from an interlocutory order has heretofore been necessary, it is sufficient that the party comply with the requirement of Massachusetts Rules of Civil Procedure 46 or the Massachusetts Rules of Criminal Procedure 22, whichever was applicable to the trial of the case in the lower court."

(1974). Rather, a party need only make objections known to the trial judge. But if, as is the case here, the party had no opportunity to object at the time the ruling was made, the absence of an objection does not interfere with the right to appeal, as long as the additional requirements of the rules of appellate procedure, including the thirty-day requirement of rule 4 (a), are complied with.

The plaintiffs also contend that a "final judgment," making the bond available to satisfy the defendants' costs did not occur until the trial judge's order of May 13. General Laws c. 231, § 60B, inserted by St. 1975, c. 362, § 5, states, in pertinent part: "If a finding is made for the defendant [by the malpractice tribunal] the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of two thousand dollars secured by cash or its equivalent with the clerk of the court in which the case is pending, payable to the defendant for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment." This language undermines the plaintiffs' argument, since the statute apparently contemplates that a judgment on the merits for the defendant will automatically make the bond available to pay defense costs. The assumption that liability on the bond is intimately tied to the substantive determination has also run throughout our cases dealing with G. L. c. 231, § 60B. In *McMahon* v. *Glixman*, 379 Mass. 60, 63-64 (1979), we pointed out that a plaintiff may "file his bond, go to trial, and, if he loses, have the alleged error by the tribunal reviewed *along with any other alleged errors arising from the trial*" (emphasis supplied). Accord, *Kapp* v. *Ballantine*, 380 Mass. 186, 190-191 (1980).

A plaintiff is amply protected from an excessive assessment against any bond that may be required by being able to contest the amount of the assessment in cases, such as this, where the plaintiff has failed to perfect her appeal on any aspect of the case. Since costs were not assessed by the clerk in this case but by the judge upon the defendants' motion accompanied by affidavits, the plaintiff was afforded

such an opportunity to contest the amount of the assessment. It should be kept in mind that the penalty amount of the bond required by § 60B is modest in comparison with the current costs of litigation, even when attorneys' fees are not included. It would only be in unusual circumstances that a defendant's costs did not consume the penalty amount of the required bond. The decision we reach here, therefore, is consistent with the requirements of Mass. R. Civ. P. 58, as amended, 371 Mass. 908 (1976), since in this case the costs to be assessed are reasonably capable of determination prior to, or at the time, judgment enters. See *New England Canteen Serv., Inc. v. Ashley,* 372 Mass. 671, 677 (1977); *Danzig v. Virgin Isle Hotel, Inc.,* 278 F.2d 580, 582 (3d Cir. 1960).

When attorneys' fees are a part of the expenses that may be charged to a losing party, under special statutory provisions, there is far less agreement about what the absence of a specific award of fees does to the finality of judgment on the substantive issues. *Draper v. Town Clerk of Greenfield, ante* 444 (1981). At least part of this disagreement may arise from the unfairness of requiring parties to decide whether to appeal before they are aware of the amount at stake. However, in the context of G. L. c. 231, § 60B, where a relatively small bond is required, there is far less danger of uncertainty since, as we have pointed out, the defendant's assessable costs will almost always exceed the amount of the required bond. There is, therefore, little reason to adopt the plaintiffs' interpretation of when a "final judgment" of bond liability occurs. We conclude that since the plaintiff failed to comply with the requirements of Mass. R.A.P. 4 (a), and since there is no showing of "good" cause for the delay, there is no reason to allow a late filing pursuant to Mass. R.A.P. 2, 365 Mass. 845 (1974).

*Appeal dismissed.*