DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. The jury found David McCain, defendant below and appellant herein, guilty of the following offenses: (1) engaging in a pattern of corrupt activity, in violation of R.C.2923.32; (2) two counts of burglary, in violation of R.C. 2911.12(A)(1); (3) two counts of money laundering, in violation of R.C. 1315.55(A)(3); (4) four counts of theft, in violation of R.C. 2913.02; and (5) forgery, in violation of R.C. 2913.31(A)(3).
 {¶ 2} Appellant raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
 {¶ 3} "THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO PRESENT IRRELEVANT AND PREJUDICIAL TESTIMONY, IN VIOLATION OF MR. MCCAIN'S RIGHT TO A FAIR TRIAL. FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, SECTIONS 5 AND 16, ARTICLE I OF THE OHIO CONSTITUTION, AND OHIO RULES OF EVIDENCE 401, 402, AND 403."
SECOND ASSIGNMENT OF ERROR:
 {¶ 4} "THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN HIGHLY PREJUDICIAL AND INADMISSIBLE INFORMATION WAS PRESENTED TO THE JURY, AND THE CONVICTION WAS FOUNDED IN WHOLE OR IN PART ON THIS INFORMATION, DENYING MR. MCCAIN DUE PROCESS OF LAW. FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
THIRD ASSIGNMENT OF ERROR:
 {¶ 5} "DAVID MCCAIN'S CONVICTIONS ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING HIM DUE PROCESS OF LAW. FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION; SECTION 16, ARTICLE I, OHIO CONSTITUTION."
FOURTH ASSIGNMENT OF ERROR:
 {¶ 6} "THE TRIAL COURT'S SENTENCE OF THIRTY YEARS IN PRISON IS CONTRARY TO LAW."
 {¶ 7} Our review of the record reveals the following facts pertinent to the instant appeal. In the summer of 1999, appellant, along with Maynard Keaton and Bobby Lowry, went to the home of seventy-two year old George W. Klamforth. The three men entered Klamforth's home and appellant demanded that Klamforth give him $6,300. Klamforth told appellant that he did not owe appellant any money. Appellant and Keaton then went upstairs to try to find money that Klamforth may have had in his home. After failing to locate any money, appellant and Keaton forced Klamforth to write a note and declare that he owed them $6,300. Klamforth stated that he did as he was told because he was afraid of appellant, Maynard, and Lowry.
 {¶ 8} A few days later, appellant and Maynard returned to Klamforth's home. The two men told Klamforth to call the bank and to obtain a loan in order to give them some money. The bank would not give Klamforth a loan, however. Appellant and Keaton then told Klamforth that they wanted the "title" to Klamforth's home. Appellant looked through Klamforth's papers to find the "title" and he then took the title.
 {¶ 9} Appellant returned to Klamforth's home a few days later and told Klamforth to transfer the title to appellant. In order to effectuate the transfer, appellant drove Klamforth to the Ohio Bureau of Motor Vehicles so that Klamforth could obtain a state identification card. Appellant then took Klamforth to Circleville to have the documents notarized. At trial, Klamforth stated that he did not want to transfer the title to appellant, but that he did so because he was afraid. Klamforth testified that if he did not sign it, appellant "might have done something" to him.
 {¶ 10} Although appellant demanded the title from Klamforth, appellant told Klamforth that he could continue to live in the house and that appellant would pay Klamforth $6,000. Appellant did not, however, ever give Klamforth any money for the property.
 {¶ 11} Appellant, Keaton, and Lowry eventually learned that Klamforth possessed approximately $10,000. After a series of phone calls and visits from appellant, Keaton, or Lowry, Klamforth issued checks that resulted in Klamforth losing all of his money.
 {¶ 12} Appellant, Lowry, and Keaton also victimized ninety-four year old Vivian Dollmeyer. The three men went to her home, pushed their way in through the door and pretended to perform various tasks around her home. The tree men then demanded to be paid for their "work." While at her home, appellant took a book of Dollmeyer's checks. Appellant's ex-wife later forged one of the checks in order to pay for furniture that she and appellant "purchased."
 {¶ 13} The police subsequently interviewed appellant. At first, appellant denied that he knew anything about his ex-wife's forgery. Later, he later admitted that he gave Dollmeyer's check book to his ex-wife. Appellant told Lancaster Police Detective Rod Sandy that "it was [appellant's] idea to purchase the furniture and he's the person who gave his ex-wife * * * the check book and had her write the check to purchase the furniture."
 {¶ 14} When the police questioned appellant about taking money from Dollmeyer, appellant claimed that he only received $25 for "gas money."
 {¶ 15} On February 2, 2001, the Pickaway County Grand Jury returned a twelve-count indictment charging appellant with the following offenses: (1) engaging in a pattern of corrupt activity, in violation of R.C. 2923.32; (2) theft, in violation of R.C. 2913.02; (3) theft, in violation of R.C. 2913.02; (4) burglary, in violation of R.C. 2911.12; (5) forgery, in violation of R.C. 2913.31(A)(3); (6) theft, in violation of R.C. 2913.02; (7) burglary, in violation of R.C. 2911.12; (8) money laundering, in violation of R.C. 1315.55(A)(3); (9) theft, in violation of R.C. 2913.02; (10) money laundering, in violation of R.C. 1315.55(A)(3); (11) money laundering, in violation of R.C. 1315.55(A)(3); and (12) theft, in violation of R.C. 2913.02.[2]
 {¶ 16} At trial, Lowry testified for the prosecution. Lowry stated that he had visited Klamforth's home with appellant and that he knew that appellant had "stolen" Klamforth's land. Lowry also stated that he and appellant had taken money from Dollmeyer. Lowry testified that they would pretend to perform various tasks at Dollmeyer's residence and demand that Dollmeyer pay them for the "work" they performed.
 {¶ 17} Over appellant's objection, Lowry explained that between 1996 and 1998 he had worked with a group of people known as the "Circleville 30." This group of more than thirty people from the Circleville area, Lowery related, would "go around and steal from the elderly, trick the elderly." Lowry stated that in 1999, he perceived appellant to be a member of the Circleville 30.
 {¶ 18} On August 6, 2001, the jury found appellant guilty of counts one through ten. The trial court sentenced appellant to thirty years in prison. Appellant filed a timely notice of appeal.
 I {¶ 19} In his first assignment of error, appellant argues that the trial court erred by allowing Lowry to testify about his criminal activity that occurred during 1996 to 1998 when appellant had not participated in any of that criminal activity. Appellant contends that Lowry's testimony was irrelevant and highly prejudicial.
 {¶ 20} Initially, we note that the decision to admit or exclude evidence is within the sound discretion of the trial court. State v. Bey
(1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. The trial court's decision to admit or exclude evidence cannot be reversed absent an abuse of that discretion. See, e.g., State v. Combs (1991), 62 Ohio St.3d 278,581 N.E.2d 1071; State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343;State v. Rooker (Apr. 15, 1993), Pike App. No. 483. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., State v. Xie (1992),62 Ohio St.3d 521, 584 N.E.2d 715; State v. Montgomery (1991),61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. See, e.g., In reJane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 359 N.E.2d 1301).
 {¶ 21} Although appellant asserts that Lowry's testimony was not relevant to the issue of appellant's guilt or innocence, it is well-established that the state is entitled to "draw the sting" of cross-examination by eliciting on direct examination facts detrimental to its own witness. State v. Sanders (2001), 92 Ohio St.3d 245, 256,750 N.E.2d 90.
 {¶ 22} "It is clearly permissible for a party to `draw the sting' of cross-examination by bringing out, on direct examination, facts that tend to discredit that party's own witness. See United States v.Frappier (C.A.1, 1986), 807 F.2d 257, 259. This is not done to impeach the witness, but to present an image of candor to the trier of fact. Evid.R. 607 was never intended to limit this practice. There is nothing `intrinsic to the jury's truth-finding function in an arbitrary requirement that opposing counsel's trial strategy may not be undercut.'Bell v. State (Fla. 1986), 491 So.2d 537, 538." State v. Tyler (1990),50 Ohio St.3d 24, 34, 553 N.E.2d 576; see, also, Sanders.
 {¶ 23} In the case at bar, we agree with the trial court that the state was entitled to inquire into its own witness's prior criminal history to "draw the sting" of Lowry's cross-examination. Moreover, we disagree with appellant that the prejudicial impact of Lowry's testimony required the trial court to exclude Lowry's testimony concerning the Circleville 30. Appellant contends that the jury likely was persuaded to find appellant guilty simply because of his alleged association with the Circleville 30.
 {¶ 24} First, we note that appellant does not object to Lowry's statement that he perceived appellant to be a member of the Circleville 30. Instead, appellant asserts that Lowry's background testimony about Lowry's own association with the Circleville 30 was unduly prejudicial. Because Lowry's testimony related only to his own activity with the Circleville 30 and did not implicate appellant in any of that activity, we fail to see how the testimony prejudiced appellant. As we already have concluded, the state properly questioned Lowry, its own witness, regarding his personal criminal history. The state was entitled to elicit on direct examination what appellant surely would have elicited on cross-examination.
 {¶ 25} Additionally, assuming, arguendo, that error exists in the admission of Lowry's testimony concerning the Circleville 30, we believe that any error would constitute harmless error. See Crim.R. 52(A) (stating that harmless errors "shall be disregarded"). The record contains other evidence that overwhelmingly supports the jury's finding of guilt. Klamforth and Lowry provided direct testimony concerning appellant's participation in the crimes. Furthermore, appellant admitted to Detective Sandy that he gave Dollmeyer's checks to his ex-wife to forge.
 {¶ 26} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 27} In his second assignment of error, appellant asserts that the trial court erred by refusing to grant his motion for a mistrial. Appellant asserts that the state inadvertently permitted the jury to hear appellant's tape recorded statement to Detective Sandy that he previously had been imprisoned. During his interview with Detective Sandy appellant stated, "I was locked up, I was incarcerated * * * [t]hat's when I went to prison."[3] Appellant contends that the jury, upon hearing the above statements, could not have continued to be fair and impartial. Appellant thus asserts that he was deprived of his right to a fair and impartial jury. Appellee contends that the "inadvertent" disclosure did not deprive appellant of a fair trial.
 {¶ 28} In evaluating whether a mistrial is proper in a particular case, the Ohio Supreme Court has "declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise." State v. Glover (1988), 35 Ohio St.3d 18, 19,517 N.E.2d 900 (citing State v. Widner (1981), 68 Ohio St.2d 188, 189,429 N.E.2d 1065). Instead, the Ohio Supreme Court "`has * * * adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his [or her] courtroom warrants the declaration of a mistrial."[4] Glover, 35 Ohio St.3d at 19
(citing Widner, supra).
 {¶ 29} "`The overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.'" Statev. Abboud (1983), 13 Ohio App.3d 62, 63, 468 N.E.2d 155 (quotingWashington, 434 U.S. at 511).
 {¶ 30} Thus, trial courts enjoy broad discretion in ruling on motions for mistrial. See, e.g., id.; see, also, State v. Iacona (2001),93 Ohio St.3d 83, 100, 752 N.E.2d 937; State v. Sage (1987),31 Ohio St.3d 173, 182, 510 N.E.2d 343. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. See State v. Swain (Jan. 23, 2002), Ross App. No. 01CA2591; State v. Pizzillo (Jan. 17, 2002), Carroll App. No. 746; Statev. Dunham (Aug. 13, 2001), Butler App. No. CA2000-11-224. We again note that an abuse of discretion connotes more than an error of law or judgment. Rather, an abuse of discretion implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., State v. Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894;State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 31} In examining whether a mistrial is appropriate, a court should use a balancing test under "which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." Id. (citing State v.Calhoun (1985), 18 Ohio St.3d 373, 481 N.E.2d 624); see, also, UnitedStates v. Scott (1978), 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65. "A defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments" Id. (quoting Wade v.Hunter (1949), 336 U.S. 684, 687, 69 S.Ct. 834, 93 L.Ed. 974). "[M]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, 580 N.E.2d 1 (citing Illinois v. Somerville
(1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425; Arizona v.Washington (1978), 434 U.S. 497, 505-506, 98 S.Ct. 824, 54 L.Ed.2d 717).
 {¶ 32} Generally, evidence tending to show that the defendant committed another crime independent of the crime for which the defendant is on trial is prohibited. See State v. Breedlove (1971),26 Ohio St.2d 178, 183, 271 N.E.2d 238; State v. Hector (1969),19 Ohio St.2d 167, 249 N.E.2d 912. Evidence of a prior offense is prohibited because of its inflammatory nature that it may incite a jury to convict based on past misconduct rather than the offense at hand. SeeState v. Allen (1987), 29 Ohio St.3d 53, 55, 506 N.E.2d 199. In order to be admitted into evidence at trial, evidence of prior acts or prior crimes must meet certain well-defined criteria. When evidence tending to show that a defendant committed other independent crimes is improperly admitted into evidence during a trial, a mistrial may be appropriate. SeeBreedlove.
 {¶ 33} In the case at bar, we do not believe that the trial court abused its discretion by denying appellant's request for a mistrial. As we noted under our discussion of appellant's first assignment of error, the evidence of appellant's guilt, including appellant's acknowledgement of his involvement in many of the charged crimes, is overwhelming. We find it extremely unlikely that appellant's short statement that he had previously been imprisoned prejudiced appellant or incited the jury to return guilty verdicts. We find nothing in the record to indicate that the jury could not continue to be fair and impartial, or that appellant was deprived of a fair trial. See, generally, State v. Mobley (Apr. 5, 2002), Montgomery App. No. 18878 (concluding that a detective's statement that he had obtained a mug shot of the defendant from a prior arrest was not so prejudicial as to require a mistrial); State v. Chappel (Nov. 6, 1997), Franklin App. No. (holding that a law enforcement officer's tape recorded statement that the defendant had "spent that much time in prison" did not require the trial court to grant the defendant's motion for a mistrial, especially when the record contained overwhelming evidence of the defendant's guilt). In fact, the jury reviewed all evidence regarding the charged crimes and acquitted appellant on one count.
 {¶ 34} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 35} In his third assignment of error, appellant asserts that the manifest weight of the evidence does not support his convictions. Rather, appellant contends that his convictions were supported "only by unreliable and self-serving testimony."
 {¶ 36} When a reviewing court considers a claim that a conviction is against the manifest weight of the evidence, the reviewing court must carefully examine the entire record, weigh the evidence and consider the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001),93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court has finished its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541 (quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 37} We note that in challenging the weight of the evidence, appellant does not argue that evidence does not exist to support his convictions. Instead, appellant recognizes that the state presented evidence that does, in fact, support his convictions. Appellant argues, however, that the evidence that the jury apparently relied upon in convicting him was not reliable. In particular, appellant asserts that the prosecution used Lowery's testimony, who appellant contends is an "admitted liar" and a "convicted felon," and that his testimony was not sufficiently reliable or believable and could not support the jury's verdict.
 {¶ 38} We disagree with appellant that the jury clearly lost its way when it determined that Lowry's testimony was credible. Both the prosecution and the appellant's counsel fully examined Lowry concerning his past criminal activity, whether he lied, whether he had received a favorable sentence recommendation as a result of his testimony at appellant's trial, and any other bias he may have had in testifying at appellant's trial. The jury, therefore, had before it sufficient facts to ascertain Lowry's credibility and to weigh it accordingly. We, sitting as a reviewing court, are ill-suited to now second-guess Lowry's credibility and usurp the role of the trier of fact. See State v. Awan (1986),22 Ohio St.3d 120, 123, 489 N.E.2d 277 ("The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact."); State v. Caldwell (1992), 79 Ohio App.3d 667,607 N.E.2d 1096 (stating that the trier of fact is free to believe all, part, or none of the testimony of each witness who appears before it). We have thoroughly reviewed Lowry's testimony and the other evidence adduced at trial and we do not believe that the jury clearly lost its way in weighing the evidence and in finding appellant guilty. The jury's verdict is not against the manifest weight of the evidence.
 {¶ 39} Thus, we find no manifest miscarriage of justice that requires us to reverse appellant's conviction. The jury was in a much better position than we, as an appellate court, to view the witnesses and to observe their demeanor, gestures, and voice inflections and to weigh the credibility of the witnesses' testimony. See, e.g., State v. Dye
(1998), 82 Ohio St.3d 323, 695 N.E.2d 763.
 {¶ 40} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.
 IV {¶ 41} In his fourth assignment of error, appellant asserts that the trial court erred by imposing consecutive sentences without making the requisite statutory findings and by imposing a total prison term of thirty years.
 {¶ 42} When an appellate court reviews a trial court's sentencing decision, a reviewing court may not modify or vacate the sentence unless the court "clearly and convincingly" finds that: (1) the sentence is not supported by the record; (2) the trial court imposed a prison term without following the appropriate statutory procedures; or (3) the sentence imposed was contrary to law. R.C. 2953.08(G)(1).
 {¶ 43} Our analysis begins with former R.C. 2929.14(E)(4),[5]
which provides:
 {¶ 44} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 45} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 46} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 47} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 48} The statute thus sets forth a "tri-partite procedure" for imposing consecutive prison sentences. First, the trial court must find that consecutive sentences are "necessary" to protect the public or to punish the offender. Second, the court must find that the proposed consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" that the offender poses. Third, the court must find the existence of one of the three enumerated circumstances in sub-parts (a) through (c). See State v. Lovely, Scioto App. No. 00CA2721, 2001-Ohio-2440; State v. Haugh (Jan. 24, 2000), Washington App. No. 99CA28. Further, a trial court state its reasons for imposing consecutive sentences. R.C. 2929.19(B)(2)(c).
 {¶ 49} In the case at bar, we believe that the trial court engaged in the proper statutory analysis. We further conclude that the trial court's sentence is not contrary to law.
 {¶ 50} The trial court sentenced appellant as follows: (1) nine years imprisonment on count one, engaging in a pattern of corrupt activity; (2) seven years imprisonment on count four, burglary; (3) six years imprisonment on count seven, burglary; (4) four years each on counts eight and ten, money laundering; (5) ten months on count five, forgery; (6) ten months each on counts two, three, and six, theft; and (7) twelve months on count nine, theft. The court ordered that the sentences imposed for engaging in a pattern of corrupt activity, for the two burglary convictions, and for the two money laundering convictions to be served consecutively.
 {¶ 51} Prior to sentencing appellant, the trial court noted that appellant possesses an extensive criminal history dating to 1984. Appellant was either convicted of or investigated for the following offenses: (1) open container; (2) failure to maintain control of a motor vehicle; (3) carrying a concealed weapon; (4) two instances disorderly conduct; (5) check fraud; (6) theft; (7) aggravated burglary; (8) menacing; (9) abduction; (10) domestic violence; and (11) arson. The Court stated that appellant "seems to continually surround himself with criminal elements." The court also observed and emphasized that appellant was on parole when he committed the offenses that are the subject of case sub judice. The court further noted the reprehensible nature of appellant's crimes: "What is sad in this case is the fact that you and these other individuals apparently selected and preyed upon the elderly, and that just can't be tolerated."
 {¶ 52} Thus, the trial court ordered as follows:
 {¶ 53} "It is going to be the order of the court, the court finding that it is necessary to fulfill the purposes and principles of sentencing under R.C. 2929.11, and is not disproportionate to the seriousness of the Defendant's conduct and the dangers the defendant possesses. The court further finds that [appellant] was on parole when he committed these offenses, the court finds that the harm caused was great, as indicated by the court previously due to the fact that these individuals were elderly citizens, the fact that Mr. Klamforth was out the sum of $9,898.00, which the court orders the defendant to make restitution in full, the fact that the victim, Vivian Dollmeyer is 92 years of age, lost $550.00, which the court will order [appellant] to make restitution to her, the court indicated the harm caused was great and unusual. The court also finds [appellant]'s criminal history requires the court, in order to protect the public, to order the sentences in part to be served consecutive and in part concurrent."
 {¶ 54} Prior to imposing appellant's sentence, the trial court sufficiently explained its reason to require appellant to serve consecutive sentences. The court explicitly found that (1) consecutive sentences are necessary to protect the public, (2) the consecutive sentences are not disproportionate to the seriousness of appellant's conduct and the danger appellant poses, and (3) (a) appellant had been on parole when he committed the crimes, (b) the harm caused was great or unusual in that appellant committed the offenses against the elderly and in that appellant deprived Klamforth of his land and of almost $10,000, and (c) appellant has a lengthy criminal history, dating back to 1984.
 {¶ 55} Additionally, the trial court's sentencing entry recites that "consecutive sentences are appropriate because [appellant] was under Community Control when the offense was committed; the harm caused was great; and Defendant's criminal history requires consecutive sentences."
 {¶ 56} Thus, our review of the transcript and the sentencing entry leads us to conclude that the trial court in the case sub judice properly ordered the sentences to be consecutively. The trial court complied with R.C. 2929.14. Furthermore, appellant has not clearly and convincingly shown that the trial court erred by imposing consecutive sentences. Quite to the contrary, we agree with the trial court that the record clearly and convincingly demonstrates that consecutive sentences were proper in the instant case.
 {¶ 57} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[2] The indictment contained eighteen counts and was brought against appellant, Keaton, and Lowry. Counts one through twelve alleged that appellant, either alone or in conjunction with Keaton or Lowry, committed the criminal activity. Counts thirteen through eighteen did not allege that appellant committed any of the crimes named therein. Instead, counts thirteen through eighteen involved criminal conduct by Keaton and Lowry.
[3] During the jury trial, the trial court offered to give to the jury a "curative instruction" regarding the significance, or the lack thereof, of appellant's interview statement. Appellant's trial counsel considered, then rejected the court's offer obviously in a strategical move to eliminate any further reference and attention to appellant's statement. Of course, trial counsel's decision does not affect our review of this issue.
[4] {¶ a} Both appellant and the state assert that the proper standard for determining whether a mistrial should have been declared in the case at bar is whether "manifest necessity" required the trial court to declare a mistrial. Our research has indicated, however, that the manifest necessity standard is employed when evaluating whether a second trial can be had after a trial court's sua sponte declaration of a mistrial or of a mistrial over the defendant's objection.
{¶ b} For example, in Cleveland v. Wade (Apr. 10, 2000), Cuyahoga App. No. 76652, the court stated:
 {¶ c} "Where the mistrial was granted upon the request of the prosecutor and over the objection of the defendant, the state carries the burden of demonstrating the manifest necessity of the mistrial in order to avoid the double jeopardy bar. See Arizona v. Washington (1978), 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717. However, if the defendant requested the mistrial, there is no bar to retrial. See United States v. Jorn (1971), 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 556-557."
 {¶ d} And in State v. Glover (1988), 35 Ohio St.3d 18, 19,517 N.E.2d 900, the Ohio Supreme Court stated:
 {¶ e} "[T]he question of whether, under the double jeopardy clause, there can be a second trial, after a mistrial has been declared, sua sponte, depends on whether (1) there is a `manifest necessity' or a `high degree' of necessity for ordering a mistrial, or (2) `the ends of public justice would otherwise be defeated.'" State v. Widner (1981), 68 Ohio St.2d 188, 189, 429 N.E.2d 1065 (citing Washington, supra).
[5] {¶ a} On July 8, 2002, the legislature amended R.C. 2929.14 for the sixteenth time since it first enacted the overhaul of Ohio's felony sentencing law, Senate Bill 2, which was supposed to have clarified and simplified felony sentencing in Ohio. The provisions of R.C. 2929.14(E) governing consecutive sentences now provide as follows:
 {¶ b} (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ c} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ d} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ e} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.