Agnes, Peter W., J.
*298 1. Introduction
This is a civil action in which the plaintiff, Proctor Group Insurance Agency, Inc. (“plaintiff’), the former employer of the defendant, Michael K. Jones (“defendant”), alleges that it suffered harm and is entitled to money damages as a result of the defendant’s violation of an employment contract. Defendant was employed by the plaintiff on two separate occasions, including his second term of employment from September 6, 2005 to approximately March 23, 2006. It is undisputed that during this second term, defendant’s employment was governed by an employment agreement, which contained warnings regarding the use of confidential information and a post-employment covenant not to compete. Defendant’s alleged actions both during his employment term with the plaintiff and after-wards are what provide the basis for this litigation.
2.
On October 6, 2006, plaintiff filed its Verified Complaint and Demand for a Jury Trial alleging five counts against the defendant, including breach of contract (non-competition), breach of contract (misappropriation of proprietary information), violation of G.L.chapter 93, violation of G.L.chapter 93A, and intentional interference with contractual or advantageous relations. Plaintiff then filed its motion for summary judgment on December 3, 2007 in which it waived count four, violation of M.G.L.chapter 93A, for the purposes of summary judgment. In brief, this court denies the motion for summary judgment because there are material issues of fact remaining, including: whether the defendant breached an enforceable covenant to not compete, whether the information taken by the defendant constituted a trade secret, whether the defendant’s actions caused a provable harm to the plaintiff, and whether the defendant’s actions included the necessary improper purpose and/or the improper means needed for a successful claim of intentional interference with contractual or advantageous relations.
3. Count One — Breach of Contract (Non-Compete)
In the verified complaint, plaintiff alleges that the defendant breached his employment agreement when he violated the non-competition covenant included in the contract. In its relevant portion, the employment agreement between the parties stated:
Employee covenants and agrees that during the period of his employment hereunder, he will not, directly or indirectly, compete with the Employer in any manner, and that for a period of twenty-four (24) months after termination of his employment with the Employer, however caused, he will not, directly or indirectly, on his own behalf or as an employee, associate or co-owner of anyone else (i) solicit, attempt to obtain, accept, write or service or transact insurance business of any nature from any person, firm, or corporation which was a customer or account of the Employer at the time of termination of his employment or within 12 months prior thereto . . .
(Employment Agreement ¶8.) In order to succeed on a claim regarding breach of contract, specifically a covenant concerning non-competition, the plaintiff must demonstrate that the enforcement of the covenant is necessary to protect the employer’s legitimate business interests, and that it is reasonable in scope. All Stainless, Inc. v. Colby, 364 Mass. 773, 779-80 (1974). In addition to this, the plaintiff must also demonstrate a breach of the covenant by the defendant. Whether the defendant breached an enforceable non-competition covenant remains a question of material fact. When examining the covenant on a statewide level, it is important to note that in Massachusetts, post-employment covenants for non-competition are generally disfavored as public policy favors free mobility of workers in the marketplace. See generally Woolley’s Laundry v. Silva, 304 Mass. 383, 387 (1939). In addition, the covenant places restrictions on the defendant’s ability to recruit business to his new place of work and maintain working relationships with clients, which, he had developed throughout his career including his time at Protector. In Mazonson, Inc. v. Greenbaum, this court held that a post-employment restriction, which prohibits the defendant from providing services or selling insurance to any of the plaintiffs customers, even if the defendant did not solicit the customers, violates public policy and is therefore unenforceable. Mazonson, Inc. v. Greenbaum, 2007 Mass.Super. LEXIS (May 27, 2008). The type of restriction discussed in Mazonson appears to be the same type of restriction in place concerning the defendant in the present matter.
4.
The plaintiff in the present matter has asserted that defendant violated the covenant not to compete contained in his employment agreement while working for Chittenden Insurance Agency of Massachusetts, Inc. (hereinafter “Chittenden”), an insurance company in direct competition with Plaintiff, by actively soliciting Plaintiffs customers while working for Chittenden. According to Plaintiff, through Jones’s efforts two customers of Protector left the insurance agency and placed their business with Chittenden, Jones’s new employer, hence the breach of the covenant not to compete. Here, the plaintiff is asserting that Jones breached the non-compete covenant included in his employment agreement when he had conversations with customers of Protector, however in light of the Mazonson case, such a restriction may not be enforceable, in which case Jones would not be in breach. Taking this into account, material issues of fact appear to remain in regards to this claim.
5. Count Two — Breach of Contract (Misappropriation of Proprietary Information)
Also contained in the plaintiffs complaint are allegations that Jones breached his employment contract *299 with Protector by misappropriating proprietaiy information. In order to be successful on such an allegation, Protector must demonstrate that the company sustained harm as a result of the defendant’s breach or conversion, that the damages sought are not speculative and that there is a causal connection between the defendant’s acts or omissions and the plaintiffs damages. See Lufkin’s Real Estate, Inc. v. Aseph, 349 Mass. 343, 346 (1965). See also Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 487 (1994). In light of this standard, there are remaining issues of fact pertaining to this count including whether the plaintiff suffered harm as a result of the defendant’s actions. In attempting to set forth the necessary information regarding this count, the plaintiff points to the defendant’s deposition testimony in which Jones admitted that upon his employment by Chittenden he forwarded onto Chittenden’s electronic mail server plaintiffs confidential information.
Q: And you did, in fact, electronically bring into their [Chittenden] computer email system, the information that originated with Protector Group; correct?
A: Yes, sir
Jones Deposition, p. 23, Ins.. 22-24. The fact that the defendant admitted to forwarding confidential information is not sufficient, however, for the plaintiff to prevail on this count, as the plaintiff must also demonstrate harm caused to Protector because of the defendant’s actions. The plaintiff claims that two customers left Protector to join Chittenden because of Jones’s solicitation, costing them approximately $68,000 in lost revenues. The mere fact that these two customers left Protector does not prove a causal connection between the defendants actions and the harm caused to the plaintiff. Moreover, Protector sets forth information culled from the defendant’s deposition testimony that Jones had conversations with several customers after leaving Protector; one of which resulted in a successful solicitation of the customer, .but they never provide information as to how exactly the defendant used the misappropriated information to cause harm to the company.
Q. Millis Plumbing was not a customer that you serviced, was it?
A. That’s correct.
Q. It was a customer that somebody else services; is that right?
A. That’s correct.
Q. It was a customer that you were able to successfully solicit while you were at Chittenden Group; is that correct?
A. Correct.
Jones Deposition, p. 30, Ins. 12-22. The aforementioned quote is indicative of the line of reasoning presented by the plaintiff throughout their pleadings. Primarily, the argument appears to be that Jones at various times had sent confidential email to himself electronically, and that after he left Protector he solicited the company’s customers to obtain insurance from him at Chittenden. What is not provided is how exactly Jones used this confidential information to solicit the customers. The Verified Complaint suggests that because Jones had information such as the date of expiration for various policies it was easier for him to solicit them, but plaintiff does not provide an example of Jones using proprietaiy information to solicit a customer which otherwise would have remained with Protector. Because of this omission, as was the case with regards to the breach of non-compete covenant claim, there are additional issues of material fact in dispute regarding this claim.
6. Count Three — Violation of M.G.L.ch. 93 (Stealing Trade Secrets)
In addition to the breach of contract claims, the plaintiff has also asserted a violation of Massachusetts General Law Chapter 93 Section 42, misappropriation of trade secrets. The law states:
Whoever embezzles, steals or unlawfully takes, carries away, conceals, or copies, or by fraud or by deception obtains, from any person or corporation, with intent to convert to his own use, any trade secret, regardless of value, shall be liable in tort to such person or corporation for all damages resulting therefrom.
M.G.L.c. 93, §42. Chapter 266 section 30 of the Massachusetts General Law defines the term trade secret as: “includ[ing] anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences, or records a secret scientific, technical, merchandising production or management information, design, process, procedure, formula, invention or improvement.” G.L.c. 266, §30. In order for the plaintiff to prevail on a count of misappropriation of trade secrets at summary judgment, it must demonstrate 1) that the information is a trade secret, 2) reasonable steps were taken to protect the information, and 3) the defendant used improper means, in breach of a confidential relationship, to misuse such information. DB Riley, Inc. v. AB Engineering Corp., 977 F.Sup. 84, 89-90 (D.Mass. 1997). On this record, whether the information transmitted by the defendant constituted a trade secret remains a disputed question of fact. In Dynamics Research Corp. v. The Analytic Sciences Corp. The Court observed that, “(i]t is well known that in business most matters are considered as confidential; however, only secrets affording a demonstrable competitive advantage may be properly considered as trade secrets.” Dynamics Research Corp. v. The Analytic Sciences Corp., 9 Mass.App.Ct. 254, 273 n.23 (1980). In J.T. Hedy & Son, the Supreme Judicial Court observed:
The essential characteristics of a trade secret . . . [is] secrecy... [and] if the person entitled to a trade secret wishes to have its exclusive use in his own business, he must not fail to take all proper and reasonable steps to keep it secret. He cannot lie *300 back and do nothing to preserve its essential secret quality, particularly when the subject matter of the process becomes known to a number of individuals involved in its use . . . He . . . must exercise eternal vigilance. This calls for constant warnings to all persons to whom the trade secret has become known.
J.T. Healy & Son v. James A. Murphy & Sons, Inc., 357 Mass. 728, 737-38 (1970). Here, the plaintiff maintains that the information transferred by Jones constituted trade secrets because it contained information which would have been extremely difficult to obtain otherwise such as the dates that insurance policies were to expire and other such information. Supplemental Affidavit of Robert Vaudreuil p. 2 (5/21/2008). The unanswered question, however, is what steps were taken by plaintiff to keep the information private, a component of trade secret law. The information that the defendant has been accused of misappropriating was available electronically, some of it even emailed to him apparently without any confidentiality notices provided in the email. Thus, it is unclear, what, if any, steps the plaintiff took to safeguard the information which they are now deeming to be “trade secrets.”
7. Count Four — Violation of M.G.L.ch. 93A
As noted in the introduction, in the plaintiffs memorandum of law in support of its motion for summary judgment, specifically on page two, the plaintiff did not include count four for the purposes of its motion for summary judgment and therefore it will not be discussed further in this memorandum.
8. Count Five — Intentional Interference With Contractual or Advantageous Relations
The plaintiff also alleges that Jones intentionally interfered with contractual or advantageous relations. A defendant may be subject to liability on such a claim if he intentionally and improperly interfered with an existing or prospective contract between the plaintiff and a third party by causing the third person not to perform the contract. Netherwood v. American Federation of States, County and Municipal Employees, Local 1725, 53 Mass.App.Ct. 11, 21 (2001). The plaintiff must show that the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not enter into or continue a business relationship, resulting in damage to the plaintiff. Buster v. Moore, Inc., 438 Mass. 635, 652 (2003). To support this claim, the plaintiff points to deposition testimony in which Jones admits to intentionally soliciting plaintiffs existing customers.
Q. During the course of your employment with Chittenden, what companies did you contact, solicit or meet with who had been customers of Protector Group?
A. NB Kenney Company.
Q. Yup.
A. Millis Plumbing.
Q. Yup.
A. Energy Insulation.
Jones Deposition, p. 91, Ins. 22-24 and p. 92, Ins. 1-10. This is not enough, however, to establish a claim of intentional interference with contractual relations, as the element of improper purpose or improper means is also necessary. Material issues of fact thus remain with regards to this aspect of the claim. Throughout the course of business, companies regularly solicit customers from their competitors in an effort to increase their business. Looking to improper means, the argument set forth by the plaintiff is that Jones used trade secrets and other confidential information that he had improperly taken from Protector to aid him in his solicitation of Protector’s customers while at Chittenden. Referring back to count three, violation of Massachusetts General Law, Chapter 93, it appeared to be unclear if Jones’s actions constituted stealing trade secrets. If it was found that Jones’s actions did not constitute stealing trade secrets, then there would be no improper means a necessary component of this charge.
ORDER
For the above reasons, the Motion for Summary Judgment is DENIED.